PEOPLE *v.* WEYONEN.

1. CRIMINAL LAW—REVIEW—QUESTIONS CONSIDERED.
   In reviewing conviction of manslaughter on grounds that not only was verdict against weight of evidence, but was unsupported by any evidence, the only question to be considered is whether there was evidence, direct or circumstantial, connecting accused with commission of the crime.

2. HOMICIDE—SUFFICIENCY OF EVIDENCE.
   In prosecution for murder, evidence reviewed, and *held,* insufficient to sustain conviction of manslaughter.

3. CRIMINAL LAW—INFERENCES TO BE DRAWN BY JURY.
   Jury may draw reasonable inferences from facts established, either by direct or circumstantial evidence, but may not indulge in inferences wholly unsupported by any evidence.

Error to Chippewa; Runnels (Herbert W.), J. Submitted April 11, 1929. (Docket No. 120, Calendar No. 34,231.) Decided June 3, 1929.

Robert Weyonen was convicted of manslaughter. Reversed and new trial granted.

*Wilber M. Brucker,* Attorney General, and *Herbert L. Parsille,* Prosecuting Attorney, for the people.

*Warner & Sullivan,* for defendant.

WIEST, J. March 27, 1928, Albert Amyotte visited the city of Sault Ste. Marie. He had with him $190 in Canadian money. He was about the city, indulged freely in intoxicating liquors, and in the evening was at the home of Earl Iobst, and was

drunk. There he was helped up from the floor and taken out of the house by Earl Iobst, George Hinds and Margaret Graham, and was led away toward the river by the two men. He disappeared. The 20th of July following, his badly decomposed body, showing many and fatal knife wounds, was discovered in a ship slip near where he was last known to have been in the company of Iobst and Hinds. He was murdered. Earl Iobst, George Hinds, and Robert Weyonen were charged with his murder, and, upon trial by jury in the Chippewa circuit, were found guilty of manslaughter.

At the close of the people's proof, and again at the close of all the proofs, counsel for Weyonen moved for his discharge on the ground that there was no evidence to go to the jury connecting him with the crime, either as principal or accessory.' Both motions were denied, and the issue as to all defendants submitted to the jury, under fair instruction, with the result mentioned. Counsel for Weyonen moved for a new trial on the grounds that the verdict as to Weyonen was not only against the weight of the evidence, but was unsupported by the evidence. This motion was denied. Weyonen prosecutes review by writ of error.

The only question we need consider is whether there was evidence, direct or circumstantial, connecting Weyonen with the commission of the crime.

Weyonen was at the Iobst house when Amyotte was taken out by Iobst and Hinds, but all the testimony was to the effect that he was drunk and asleep on a bed, except once when he arose to vomit, that he took no part in the removal of Amyotte, and was too drunk to be aware of Amyotte's removal from the house. It is true that shortly after Amyotte's removal from the house, Weyonen, the two other de-.

fendants, Margaret Graham, and another woman went in a taxi to a restaurant and another place and spent the night in a drunken carousal. The three defendants and .the two women mentioned are evidently of low order, and the day and night of the murder they indulged in an almost incredible drinking bout, in which Mr. Amyotte was for a time a participant. Weyonen may be guilty. Our review, however, is limited to the question of whether there was evidence at the trial from which the jury could find him guilty.

We are removed, it is true, from the atmosphere of the trial, but have before us the printed record of the testimony given by witnesses, with opportunity to note discrepancies, contradictions, vacillations, and prevarications. We note the fact that the prosecution had to depend upon such testimony as was available. If the jury accepted the testimony of witnesses for the prosecution, Weyonen should have been found not guilty. If such testimony was rejected by the jury, then the verdict as to Weyonen must have been upon inferences based upon assumptions not supported by established circumstances. No witness connected Weyonen in any way with the crime charged, and the witnesses who testified to the acts and doings of Weyonen that night negatived his participation. Weyonen's joint defendants had no reason for trying to shield him. Hinds had had trouble with Weyonen some time before, in which he claimed a knife figured, but his testimony negatived any opportunity for Weyonen being the assassin. Other witnesses, with knowledge, testified to lack of opportunity for Weyonen to have killed Amyotte, and no witness testified to any concert of action toward that end involving Weyonen, or that he was even aware of any such purpose. It is manifest that

Weyonen did not kill Amyotte, and the evidence of circumstances affords no basis for even an inference that he was party to or even aware of any such purpose by others.

We spend no time upon the evidence connecting the other two defendants, beyond saying that when Hinds came back to the house, after helping to remove Amyotte, he had an injury to one of his hands, and was given a treatment of iodin, and that Iobst admitted having Amyotte's $190 in Canadian bills, but claimed it was given to him by Amyotte for safe-keeping.

A jury may draw reasonable inferences from facts established, either by direct or circumstantial evidence, but may not indulge in inferences wholly unsupported by any evidence.

Upon this record, we must reverse the conviction of Weyonen and grant him a new trial, and remand him to the custody of the sheriff of Chippewa county to await such trial.

Unless the prosecution can bring further evidence against defendant Weyonen, he should be discharged.

NORTH, C. J., and FELLOWS, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. FEAD, J., took no part in this decision.