## PEOPLE v. HUEY.

1. Conspiracy—Circumstantial Evidence—Inferences.
   Conspiracy may be established by circumstances and may be based on inferences.

2. Same—Knowledge of Ramifications or Conspirators.
   It is not necessary to a conviction for conspiracy that each defendant have knowledge of all of its ramifications or know all of the conspirators.

3. Same—Violation of Law—Intent.
   One knowing that others have combined to violate law, who cooperates knowingly to further the object of the conspiracy, becomes a party thereto, though he is not acquainted with each of the other conspirators and may know but 1 of them.

4. Same—Violation of Cigarette Tax Act—Evidence.
   Evidence presented in prosecution for conspiracy to violate the cigarette tax act *held*, sufficient not only to establish the conspiracy but also to present a question of fact to the jury as to the knowledge and participation of defendant therein (CL 1948, §§ 205.501, 205.504–205.506, 205.509, as amended by PA 1949, No 312, and PA 1951, No 78; § 750.505).

5. Same—Violation of Cigarette Tax Act—Intent—Evidence.
   No reversible error was committed by trial court in prosecution of appellant and 14 others for conspiracy to violate the cigarette tax act by reason of failure to strike from the record testimony of an alleged conspiracy of 3 other defendants and a coconspirator relating to events that took place after the conclusion of the conspiracy with which defendant was charged,

---

References for Points in Headnotes

[1] 11 Am Jur, Conspiracy § 38.
[2] 11 Am Jur, Conspiracy § 40.
[3] 11 Am Jur, Conspiracy § 7.
[5] 11 Am Jur, Conspiracy § 37.
[6] 14 Am Jur, Criminal Law § 150; 53 Am Jur, Trial § 506.
[7, 8] 3 Am Jur, Appeal and Error § 246.

where charge to jury limited the consideration of such testimony to substantive proof of guilt of the 3 other defendants and solely as evidence of intent of general plan or scheme prior to the termination of the conspiracy with which appellant had been charged (CL 1948, §§ 205.501, 205.504–205.506, 205.509, as amended by PA 1949, No 312, and PA 1951, No 78; § 750.505).

6. CRIMINAL LAW—CONSPIRACY—FAILURE TO TAKE WITNESS STAND—PRESUMPTIONS—BURDEN OF PROOF.

Such error as there may have been committed by assistant prosecuting attorney in stating to jury in prosecution of appellant and 14 others for violation of the cigarette tax act that "no one has taken the stand and said they worked in a legitimate business" which he thereafter explained as referring to the conspirators who had taken the stand *held,* to have been corrected by instruction to jury relative to right of defendants not to take the witness stand, the presumption of innocence and good character and the duty of the prosecution to prove guilt of each and every defendant beyond a reasonable doubt (CL 1948, §§ 205.501, 205.504–205.506, 205.509, as amended by PA 1949, No 312, and PA 1951, No 78; § 750.505).

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CONSPIRACY TO VIOLATE STATUTE—CONSTITUTIONAL LAW—DIRECTED VERDICT—MOTION TO QUASH.

The matter of constitutionality of the cigarette tax act is not before the Supreme Court, where record fails to show such question was presented for determination by the trial court either by motion for directed verdict at the close of the people's case in prosecution for conspiracy to violate the act or by motion to quash the information on ground that act was unconstitutional (CL 1948, § 205.501 *et seq.*, as amended by PA 1949 No 312, and PA 1951, No 78).

8. SAME—QUESTIONS REVIEWABLE—OBJECTIONS NOT RAISED BEFORE TRIAL COURT.

Objections not raised during the trial and passed upon by the trial court will not be heard for the first time by the Supreme Court.

Appeal from Recorder's Court for the City of Detroit; Krause (Paul E.), J. Submitted January 12, 1956. (Docket No. 82, Calendar No. 46,145.) Decided April 2, 1956.

Clarence Huey was convicted of conspiracy to violate cigarette tax act. Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

*Michael A. Guest,* for defendant.

SHARPE, J. Upon leave being granted, defendant, Clarence Huey, appeals from a conviction and sentence based upon an information charging him with being a part of a conspiracy to violate the provisions of the State cigarette tax act, being PA 1947, No 265 (CL 1948, § 205.501 *et seq.,* as amended by PA 1949, No 312,. and by PA 1951, No 78 [Stat Ann 1950 Rev and Stat Ann 1951 Cum Supp § 7.411(1) *et seq.*]).

. Count one of the information charges defendant and 14 others as follows:

"On the 1st day of July, A.D. 1947, and on divers other days and dates up to and including the 21st day of February, A.D. 1953, at the said city of Detroit, in said county, and/or other municipalities in the county of Wayne, did unlawfully and wickedly, maliciously and feloniously conspire, combine, confederate and agree, together and with each other and with divers other persons, and to and with William Maskeny, Durell Meadows, John A. Perrella, Stuart Goike, Arthur Hitchens, Dominic LeDuca and Thomas Maskeny, to violate the provisions of PA 1947, No 265, as amended, to-wit, to unlawfully possess, acquire and transport and sell to others for resale, thousands of cases of cigarettes of a wholesale value in excess of $50, to-wit, approximately $5,000,000 without having and obtaining licenses and permits as wholesalers, secondary wholesalers, transporters, and unclassified acquirers, and to unlawfully possess, acquire, transport and offer to sell thousands of cases of cigarettes of a wholesale value

in excess of $50, without having and obtaining the necessary licenses and permits therefor; and to possess, acquire, transport and offer for sale the said cigarettes in original manufacturers shipping cases, not marked with the name and address of the person making the first purchase of said cigarettes in this State; and to possess, acquire, transport and offer to sell the said cigarettes without keeping a complete and accurate record of the purchase and acquisition of said cigarettes; and to possess, acquire, transport and offer to sell the said cigarettes without keeping a written statement of the name and address of both the seller and the purchaser, date of delivery, quantity, name and price paid for said cigarettes; and without keeping and furnishing purchase orders, invoices and bills of lading, and to evade the payment of cigarette taxes to the State of Michigan in an amount of approximately $1,000,000; contrary to CL 1948, § 750.505, and contrary to CL 1948, §§ 205.-501, 205.504, 205.505, 205.506, and 205.509."

One of the coconspirators was dismissed as a defendant prior to trial, another plead guilty prior to trial, and the prosecution dismissed a third at the conclusion of the trial.

In the course of the trial the lower court ruled that the testimony disclosed 2 separate and distinct conspiracies. The court ruled that the conspiracy here involved was concluded as of December 15, 1951, and that the subsequent conspiracy involved defendants, Sam Frontiera, Anthony Palazzola and Ernest Brown only. Appellant was therefore charged with participation in the first conspiracy.

It appears that during the closing argument to the jury the assistant prosecutor made the following statement, "no one has taken the stand and said they worked in a legitimate business." Thereupon, defense counsel asked for a mistrial, which was denied by the court. In his instructions to the jury, the court instructed them as follows:

"None of the defendants have taken the stand, which is their right and privilege, as it is not incumbent on any defendant in any case to prove his innocence; on the contrary, it is incumbent on the people to prove the guilt of each and every defendant, beyond a reasonable doubt, because, every defendant, no matter what the case may be, is presumed to be innocent, unless proven to the contrary, to be a person of good character."

The jury returned a verdict of guilty against defendant Huey on the first count. Six defendants were acquitted by the jury, 4 defendants were found guilty on both counts, and another defendant was found guilty on the second count. Defendant herein was later sentenced by the court. In his appeal defendant urges that the testimony given during the trial did not disclose beyond a reasonable doubt that defendant was an active participant in the conspiracy.

It is the rule in this State that conspiracy may be established by circumstances and may be based on inferences, see *People* v. *Garska,* 303 Mich 313. Moreover, it is not necessary to a conviction for conspiracy that each defendant have knowledge of all of its ramifications or know all of the conspirators, see *People* v. *Cooper,* 326 Mich 514. In *People* v. *Heidt,* 312 Mich 629, 646, we quoted with approval from a paragraph of the headnotes in *Allen* v. *United States* (CCA), 4 F2d 688, as follows:

" 'One knowing that others have combined to violate law, who cooperates knowingly to further object of conspiracy, becomes a party thereto, though he is not acquainted with each of the other conspirators, and may know but 1 of them.' "

In *People* v. *McKenna,* 282 Mich 668, 674, it is said:

"Defendant is justified in his argument that, 'The circumstances relied upon by the people in the case at

bar are meager indeed,' but we do not agree with his contention that they are 'so utterly lacking in probative force as to justify even an inference of appellant's guilt.'

"We think, on the contrary, that a case was made out by the people. No testimony was offered by the defendant. There is enough testimony in the record from which reasonable inferences may be drawn to sustain the jury's verdict of guilty of conspiracy to commit a crime. See *People* v. *Martin,* 235 Mich 206; and *People* v. *Weyonen,* 247 Mich 308."

And in *People* v. *Cooper,* 326 Mich 514, this Court held, *inter alia,* that a person may be a party to a continuing conspiracy by knowingly cooperating to further the object thereof, and that it is not necessary to a conviction for conspiracy that each defendant have knowledge of all of its ramifications, and that it is not necessary to a conviction for conspiracy that 1 conspirator should know all of the conspirators or participate in all of the objects of the conspiracy.

Counsel for appellant seeks to have this Court take over the functions of the jury and decide questions of fact already determined by the jury under proper instructions.

As was said in *People* v. *Heidt,* 312 Mich 629 (syllabus 17):

"One knowing that others have combined to violate law, who cooperates knowingly to further the object of the conspiracy, becomes a party thereto, though he is not acquainted with each of the other conspirators and may know but 1 of them."

We have in mind that the record shows that there was a conspiracy to violate a statute regulating the traffic of cigarettes for the purpose of collection of a tax thereon. The question now before us is to determine whether there was competent evidence beyond a reasonable doubt to sustain the conviction of defendant. The evidence is undisputed that defendant

operated a restaurant on Gratiot avenue in the city of Detroit with an office in the basement of the restaurant; that neither defendant nor Sam Frontiera had a license from the cigarette tax division of the department of revenue of the State of Michigan, and that Sam Frontiera was the leader of the group involved in the conspiracy. It also appears that defendant's restaurant was the headquarters where the group met and transacted business.

The record shows that there was testimony from Durell Meadows that he was paid $50 a trip by Sam Frontiera for bringing a load of contraband cigarettes into Michigan; that payment was sometimes made at defendant's restaurant.

Arthur Hitchens testified that defendant paid him once for hauling cigarettes into Michigan, but didn't know whether Sam Frontiera left the money with defendant to pay him.

Dominic LeDuca testified that he hauled cigarettes into Michigan, and was paid for such services by Sam Frontiera at defendant's restaurant and in the presence of defendant; that he quit hauling cigarettes in March, 1951, and began again to haul cigarettes in August, 1951; that from March to August he was paid $100 per week when he was not working, and that this money was paid to him by defendant. He also testified:

"In August of 1951 I did talk to Sam Frontiera about cigarettes in the restaurant on Gratiot, the Golden Parrot. Five different gentlemen were present then. They were Sam Frontiera, Augie De-Angelo, Mr. Huey, Mr. Peter Monteleone and Phil Guastella. * * *

"This conversation took place at the Golden Parrot restaurant. Mr. Sam Frontiera was talking. He said he wanted to back me up in the cigarette deal. I was supposed to go to Wisconsin in a legitimate deal and bring eggs over here. I was not crazy about

it.  He told me I could work with cigarettes again if I wanted to and I said okay.  * * *

"I then proceeded to start to work immediately, to go to St. Louis and come back with cigarettes.  I would leave in an automobile, at that time it was a 1951 Nash.  At first, they picked me up at the house. Tony Palazzola and Durell Meadows.  After they picked me up, I would go to St. Louis in the Nash. We stopped at Hobart, Indiana, to pick up an empty semitrailer.  This trailer had Missouri license plates. We took the 1951 Nash with us to St. Louis with the trailer, Tony Palazzola and I.  I drove the truck; Tony Palazzola drove the Nash.  When we got to St. Louis we went to the tobacco dealer; I went to the garage.  At the time it was the Holt Drayage Company.  I stood there and had to wait until Tony and whoever was with him delivered me to the Brown Tobacco Company and they would hire a truck in the organization and bring the cigarettes to the garage and we would load them on the semitrailer."

Stuart Goike testified that he paid defendant once a week for a period of 6 months for cigarettes received.

We conclude from the above testimony that defendant's restaurant was the rendezvous of the conspirators; that defendant paid money to the employees of the conspirators whether they were working at the business of transporting cigarettes or on vacation from such work.  The facts shown in this case, and the inferences that can be drawn from them, are of sufficient importance to present a question of fact to the jury as to the knowledge of and participation of defendant in the conspiracy to transport cigarettes into Michigan without paying the tax thereon.

It is also urged that the trial court was in error in failing to strike from the record testimony of an alleged conspiracy of 3 other defendants and a coconspirator.  The testimony referred to was given by

Edgar Brown, who stated that during the summer or fall of 1952 he and Tony Palazzola were in defendant's restaurant and defendant counted out approximately $22,600, and at a later date the sum of approximately $32,000, and gave the same to Tony Palazzola. The objection to this testimony is that the above payments occurred subsequent to December 15, 1951. We note that at the time this evidence was given defendant was charged with having participated in a conspiracy from July 1, 1947, and divers other days up to and including February 21, 1953. We also note that the trial court charged the jury as follows:

"However, in relation to Sam Frontiera and Anthony Palazzola and Ernest Brown, you may consider their actions subsequent to December 15, 1951, as bearing solely in relation to their intent and knowledge of a general plan or scheme prior thereto, but you cannot, in such an event, it cannot be considered by you as any substantive proof of their guilt as to what they did after December 15, 1951. You cannot consider anything that happened after December 15, 1951, as to any of the defendants except as I stated as to Sam Frontiera, Anthony Palazzola and Ernest Brown, and then only as to their intent previous thereto."

We conclude that at the time the above evidence was given it was admissible evidence against all defendants who participated in the conspiracy. The fact that the trial court limited the time of the conspiracy to December 15, 1951, as to defendant in his instructions to the jury on this issue, brings us to the conclusion that there was no reversible error committed.

It is also urged that the assistant prosecuting attorney committed error in his closing address to the jury in stating, "no one has taken the stand and said they worked in a legitimate business." In explana-

tion the assistant prosecuting attorney stated to the
jury:

"*Mr. Kaufman:* Ladies and gentlemen of the jury,
just before recess for lunch, I was trying to tell you
that none of the coconspirators, such as Goike,
Meadows, Hitchens and LeDuca said they were work-
ing at Ford's or a legitimate place of business but
they admittedly told you who they were working for
and how they got in the business."

The trial court gave the following instruction to
the jury:

"None of the defendants have taken the stand,
which is their right and privilege, as it is not incum-
bent on any defendant in any case to prove his inno-
cence; on the contrary, it is incumbent on the people
to prove the guilt of each and every defendant, be-
yond a reasonable doubt, because, every defendant,
no matter what the case may be, is presumed to be
innocent, unless proven to the contrary, to be a per-
son of good character."

We note that the assistant prosecuting attorney
did not state that the defendant did not take the stand
and testify. We are of the opinion that the above
instruction given to the jury by the trial court cor-
rected any error that might have existed by the
above-quoted statement.

It is also urged that PA 1947, No 265 (CL 1948,
§ 205.501 *et seq.,* as amended by PA 1949, No 312,
and by PA 1951, No 78 [Stat Ann 1950 Rev and Stat
Ann 1951 Cum Supp § 7.411(1) *et seq.*]), is unconsti-
tutional. We note that the record is silent as to any
motion for a directed verdict at the close of the
people's case on the ground that the above act is un-
constitutional, nor is there any record to show that a
motion was made to quash the information for a sim-
ilar reason. In *People* v. *Matteson,* 280 Mich 218,
221, we said:

"Upon other occasions we have said that objections not raised during the trial and passed upon by the trial court will not be heard here for the first time. This disposes of the constitutional objection and leaves only the objection upon the part of the defendant that the complaint and information did not inform the defendant that he was charged with anything other than common-law larceny."

In our opinion the record contains testimony from which a jury could find defendant guilty of participating in a conspiracy as charged in the information filed against him. We find no reversible error.

The judgment is affirmed.

DETHMERS, C. J., and SMITH, REID, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.