PEOPLE *v.* SPANN.

SAME *v.* ADAMS.

1. CRIMINAL LAW—JURY TRIAL—EVIDENCE.

A jury's verdict in a criminal case must stand if proof of the elements of the crimes alleged was presented to it as the jury has viewed the witnesses, heard all the testimony, and was in a superior position to determine their credibility.

2. SAME—JURY—DIRECT OR CIRCUMSTANTIAL EVIDENCE—INFERENCES.

A jury in a criminal case may draw reasonable inferences from facts established either by direct or circumstantial evidence, but may not indulge in inferences wholly unsupported by any evidence.

3. SAME—CONSPIRACY—LARCENY—EVIDENCE.

Conviction of defendant janitor of conspiracy and larceny over $100 may not be supported, where record fails to establish any connection between him in either the conspiracy or the alleged larceny (CLS 1961, §§ 750.356, 750.505).

4. SAME—PRESUMPTION OF INNOCENCE.

The presumption of innocence is no idle philosophical expression, but surrounds defendant, and is vulnerable only to proof beyond a reasonable doubt.

5. SAME—VERDICT—EVIDENCE—REASONABLE DOUBT.

A verdict of guilty in a criminal case cannot properly rest on a mere preponderance of the evidence, but should be based on proof that leaves no reasonable doubt of guilt.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence § 1216 *et seq.*
[2] 20 Am Jur, Evidence § 1217.
[3, 16] 16 Am Jur 2d, Conspiracy §§ 34, 35.
[4, 9] 20 Am Jur, Evidence § 222.
[5, 6] 20 Am Jur, Evidence § 1256.
[7] 16 Am Jur 2d, Conspiracy § 36.
[8] 20 Am Jur, Evidence § 149 *et seq.*
[10–13] 21 Am Jur 2d, Criminal Law §§ 440, 441.
[14] 5 Am Jur 2d, Appeal and Error § 553 *et seq.*
[15] 21 Am Jur 2d, Criminal Law §§ 143–145.
    Availability of defense of entrapment where accused **denies participating** at all in offense. 61 ALR2d 677.
[17] 53 Am Jur, Trial §§ 824, 825.

6. SAME—REASONABLE DOUBT—EVIDENCE.

The people must prove every element of the crime charged by direct or circumstantial evidence beyond a reasonable doubt.

7. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.

Conspiracy may be proved by circumstantial evidence, but the circumstances must be such as to warrant a fair inference of the facts to be established.

8. CRIMINAL LAW—BURDEN OF PROOF.

It is incumbent on the prosecution to show under all circumstances, as a part of their own case, unless admitted or shown by the defense, that there is no innocent theory possible which will, without violation of reason, accord with the facts.

9. LARCENY—THEORY OF CASE—PRESUMPTION OF INNOCENCE.

Larceny conviction of defendant janitor is reversed without a new trial, where the prosecution failed to present a theory of the case and proof that excluded all possible theories of innocence explaining his conduct (CLS 1961, § 750.356).

10. CRIMINAL LAW—PRELIMINARY EXAMINATION—BINDING OVER FOR TRIAL.

All that the examining magistrate need find at a preliminary examination in order to bind over an accused for trial is that an offense has been committed, and that there is probable cause to believe the accused committed it (CL 1948, § 766.13).

11. SAME—PRELIMINARY EXAMINATION—EXAMINING MAGISTRATE—EVIDENCE.

The examining magistrate at a preliminary examination does not sit as a trier of fact, and he need not weigh the evidence to see if there is proof of guilt beyond a reasonable doubt (CL 1948, § 766.13).

12. SAME—PRELIMINARY EXAMINATION—EXAMINING MAGISTRATE.

Finding of examining magistrate that probable cause was established that defendant committed the crimes of conspiracy and larceny over $100, *held* supported by the record of the preliminary examination (CLS 1961, §§ 750.356, 750.505; CL 1948. § 766.13).

13. SAME—PRELIMINARY EXAMINATION—PROBABLE CAUSE—DISCRETION OF EXAMINING MAGISTRATE.

An appellate court cannot substitute its judgment for that of an examining magistrate for his determination of probable cause that a crime was committed, unless there has been a clear abuse of his discretion (CL 1948, § 766.13).

14. Appeal and Error—Questions Reviewable—Objections—Time.

   Objections not raised during the trial and passed upon by the trial court will not be heard for the first time by an appellate court.

15. Criminal Law—Entrapment—Change of Theory of Defense.

   Defendant's claim on appeal of entrapment, which the record shows was not raised as a defense at trial of prosecution for conspiracy and larceny over $100 *held*, without merit, as a defense not asserted at trial cannot be the basis for reversal on appeal, since the Court will not allow counsel to take one tactical approach on trial and then on appeal seek to use another avenue of defense.

16. Same—Conspiracy—Larceny—Evidence.

   Evidence presented in prosecution of defendant, a new purchaser of marked bales of waste paper from clothing store, for crimes of conspiracy and larceny over $100 *held*, sufficient to sustain conviction by jury, where the circumstantial evidence, including delivery of the bales to a garage where valuable garments were found to have been extracted by such defendant, leaves no reasonable doubt of his guilt (CLS 1961, §§ 750.356, 750.505).

17. Same—Instructions—Objection.

   Claim of defendant as to highly prejudicial nature of trial judge's secondary instruction to the jury in prosecution for conspiracy and larceny over $100 *held*, without merit, where no timely objection was made, and where at the time of this secondary instruction the jury indicated it had reached a verdict regarding two of the defendants, and as to the third defendant, no verdict was ever reached (CLS 1961, §§ 750.356, 750.505).

Appeal from Recorder's Court; Krause (Paul), J. Submitted Division 1 January 6, 1966, at Detroit. (Docket No. 140.)   Decided June 14, 1966.   Application by defendant Spann for substitution of attorneys and for rehearing denied August 30, 1966. Leave to appeal denied by Supreme Court December 20, 1966.   See 378 Mich 744.

Donald Spann and Leonard Adams were convicted of conspiracy and larceny of property valued over $100.   Defendants appeal.   Reversed without a new

trial as to defendant Adams.    Affirmed as to defendant Spann.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rheo D. Marchand,* Assistant Prosecuting Attorney, for the people.

*Charles S. Brown,* for defendant Adams.

*Walter A. Kurz,* for defendant Spann.

*Gerald David White,* for defendant Spann on application for rehearing and leave to appeal.

LESINSKI, C. J.    Defendants Donald Spann, Leonard Adams, and others were tried by jury in recorder's court for the city of Detroit on charges of conspiracy, CLS 1961, § 750.505 (Stat Ann 1954 Rev § 28.773), and larceny over $100, CLS 1961, § 750.356 (Stat Ann 1965 Cum Supp § 28.588). Spann and Adams were convicted, sentenced, and now appeal.

In late November, 1963, Theodore Kaplan, controller of Sak's Fifth Avenue, Detroit store, received a telephone call from Ted Lole, general manager of Lafayette Waste Paper Company, the company that picked up Sak's baled waste paper.    At a meeting held later on the same day, Mr. Lole produced various articles of clothing, later identified to be Sak's merchandise, which he had found in one of the bales picked up by Lafayette earlier on the 26th of November, 1963.    At the time of their meeting, Mr. Lole revealed that the bale in which the clothing was found was marked in white chalk with various small "x's."

Mr. Kaplan notified the Detroit police department of the result of this meeting, after which the police department set up an elaborate surveillance of the

Sak's loading dock located behind the store, in the New Center Building in midtown Detroit.

On December 2, 1963, Detective Dinning, the officer in charge of the surveillance, was notified that a bale bearing an "x" chalk mark had been discovered in the baling room, in the basement of the Sak's store. The next day Detective Dinning observed two unidentified men sitting for an hour and a half in a white, 1960 Oldsmobile with a blue convertible top parked at a meter near the loading dock. It was later learned that this car was registered in defendant Adams' name.

On December 4, 1963, a second marked bale appeared in Sak's baling room, and the employees were instructed to take all of the bales out to the loading dock, contrary to former procedure, whereby the driver from the waste paper company would take the bales directly from the baling room. On this day defendant Adams, who was employed by Allied Maintenance Company, the company that supplies janitorial service to Sak's, assisted in taking the last of six bales out to the dock, which was not one of his usual duties. Some time after the bales were placed on the dock, defendant Spann was spotted in the alley going over to and examining the bales as they stood on the loading dock.

A new waste paper company was hired to pick up this load, and the driver's assistant was a police officer named Ruppel.

After the bales were picked up, Officer Ruppel, in the waste paper company truck, noted that they were being followed by three cars, one of which was the 1960 Oldsmobile convertible.

On the way to the waste paper company, at the intersection of Piquette and Beaubien streets, the truck driver was hailed by someone in the 1960 Oldsmobile convertible. When the truck came to a stop,

a man identified as Howard Wheeler stated he was
going to buy the paper on the truck. The driver
said that the paper was going to the shop; that all
he was doing was making the pickup. After the
truck arrived at the waste paper company, Officer
Ruppel, as he came out of the office, was approached
by Spann, James Anderson and George Hill, who
had been following the truck in a black, 1963 Chev-
rolet convertible, license number FW 3315. Defend-
ant Spann offered Officer Ruppel $100 for a bale of
paper. Officer Ruppel countered with an offer to
sell all six bales. George Hill offered $200 for the
six bales and Officer Ruppel accepted, whereupon
George Hill gave Officer Ruppel a $100 bill. It was
arranged that the truck would deliver the bales to
216 Waverly street in the city of Detroit. Anderson
rode along with Officer Ruppel and the waste paper
company driver to point out the place for delivery.
Upon arriving at the point of delivery, defendant
Spann gave Officer Ruppel five $20 bills and defend-
ant Spann prepared a receipt showing that he had
paid $200 for the six bales of paper and had Officer
Ruppel sign the receipt. The bales were then un-
loaded into a garage. While at the garage, defend-
ant Spann asked Officer Ruppel if he would be mak-
ing the pickup at Sak's every day. Upon learning
that he would, defendant Spann offered to pay Of-
ficer Ruppel $100 for every bale he (Spann) wanted.
He further made an agreement to have Officer
Ruppel pick up five of the bales just purchased the
next day for which he was to return $50 to defendant
Spann.

After completing this transaction, Officer Ruppel
returned to the Midland Waste Paper Company
office and there met Detectives Dinning and Wein-
berg. All three immediately went to the Waverly
address, where they found defendant Spann alone

in the garage with a bale broken open and various garments piled atop another bale. Spann was arrested and these clothes were later identified as belonging to Sak's Fifth Avenue. On trial, the value of these garments was placed at slightly over $4,000.

After arrest of the other named defendants, formal examination was held on January 14, 1964, at which time the codefendants were bound over for trial. On arraignment all the codefendants pleaded not guilty. Codefendant Spann filed a motion to suppress evidence, quash the information and for separate trials. It was denied.

The testimony revealed that Leonard Adams, who normally had no duties in the baling room, had access to it and, in fact, was in the baling room on occasions. On one occasion he was seen making marks with white chalk upon one of the bales in question. It was described as a tic-tac-toe game involving "x's" and "o's" in which he engaged a fellow employee, Johnny Stamps. Charles Gray, who worked the baling room as a relief baler, and the store manager testified there was no need for the use of chalk in the baling room.

The testimony further revealed that of the two marked bales in the December 4, 1963 group, the one with an "x" had no clothing in it, though the one marked with a white chalk "2" did have garments in it identified as belonging to Sak's.

The testimony revealed that title to the 1960 Oldsmobile convertible used by Wheeler in hailing the truck was in the name of Leonard Adams; that one Carlton Jackson, the brother-in-law of Wheeler, claimed actual ownership; that on December 3d Jackson had committed possession of said vehicle to Leonard Adams for purposes of having repairs made to the transmission; that two unidentified men were seen in this vehicle while it was parked near

the Sak's loading dock on December 3, 1963, for a period of an hour and a half; that, at the end of this period, a woman came out of Sak's, entered the vehicle, and they all drove away.

At the completion of the people's case, counsel for defendant Adams moved for a directed verdict in favor of his client claiming that the proofs were so unsubstantial against Adams that the case ought not go to the jury. The trial court denied this motion stating that he felt sufficient proofs had been adduced to allow the case against Adams to go to the jury. The jury found defendants Spann and Adams guilty as charged. The charges against defendant Howard Wheeler were dismissed by the trial court for lack of proof.

The issues raised on appeal by defendant Adams question the sufficiency of the evidence to enable the jury to make a finding that he conspired to commit larceny, and that he also committed the crime of larceny.

In reviewing a jury determination in a criminal appeal, this Court must tread lightly, as the jury viewed the witnesses, heard all the testimony, and was in a superior position to determine the credibility of all that passed before it. Therefore, if proof of the elements of the crimes alleged was presented to the jury, its verdict must stand. As the Supreme Court said in *People* v. *Weyonen* (1929), 247 Mich 308, 311:

"A jury may draw reasonable inferences from facts established, either by direct or circumstantial evidence, *but may not indulge in inferences wholly unsupported by any evidence.*" (Emphasis supplied.)

We have gone through the record with great care, and except for those facts previously enumerated, the people adduced no other proof that would tie

the defendant Adams into either the conspiracy or the larceny alleged.

We find no evidence presented which connects Leonard Adams with the bale or marking of the bale that was picked up at Sak's on the 26th of November, 1963, containing clothing belonging to Sak's and marked with various small "x's."

No evidence was presented to establish the true nature of the bale marking system employed by the pilferers in this operation. Evidence disclosed that one bale containing clothing was marked with "x's" and another with a "2," while one marked with an "x" contained none. From the fact that Spann was able to break open the exact bale containing the clothing, from his agreement to resell five bales the next day, and from his offer of $100 for certain bales, one can reasonably infer that a prearranged code for marking bales containing clothing existed.

The evidence presented in this case failed to establish any connection between Adams and Spann, or Adams with James Anderson and George Hill, whom, it was testified, were present when Spann bought the bales from Officer Ruppel.

We are not unmindful of the facts that the white, 1960 Oldsmobile was registered in Adams' name, that it was committed to his custody on December 4, 1963, that it was the vehicle seen occupied by two unidentified men near Sak's on December 3, 1963, that it was the same vehicle from which Wheeler hailed the truck on its way to the waste paper plant; or of the fact that Adams engaged Johnny Stamps in a game involving "x's" and "o's" on a bale in the baling room of Sak's. These circumstances taken alone or together are as consonant with innocence as with guilt. No adequate showing was made that Wheeler was part of a conspiracy or that his actions of December 4, 1963, involved criminality.

There is no doubt in the mind of this Court that the incident of December 4, 1963, was part of a very elaborate conspiracy to commit the larceny of goods from Sak's; however, the people have failed to show that Leonard Adams was a part of the conspiracy. It would matter not that this Court might feel instinctively that the facts surrounding Leonard Adams were more than mere coincidences. The presumption of innocence under our system of jurisprudence is no idle philosophical expression. This presumption surrounds defendant Adams as thoroughly and completely as a cloak of the hardest steel vulnerable only to proof beyond a reasonable doubt. It is the reasonable possibility of innocence which can be attached to Adams' involvement herein that causes us to find for Adams.

The quantum of proof adduced by the people in this case may reach the level of a preponderance of the evidence, but it does not reach the level of proof beyond a reasonable doubt. As the Supreme Court so aptly stated in *People* v. *Gadson* (1957), 348 Mich 307, 310, speaking through Justice DETHMERS:

*"A verdict of guilty in a criminal case cannot properly rest on a mere preponderance of the evidence, but should be based on proof that leaves no reasonable doubt of guilt. People* v. *Sligh,* 48 Mich 54; *People* v. *Mayrand,* 300 Mich 225; *People* v. *Franczyk,* 315 Mich 384. The people must prove every element of the crime charged by direct or circumstantial evidence beyond a reasonable doubt. *People* v. *Bagwell,* 295 Mich 412."* (Emphasis supplied.)

Under CLS 1961, § 750.505, *supra,* the common law crime of conspiracy has been raised to a felony, but these elements are still derived from the cases and must be proved beyond a reasonable doubt. As

the Court stated in *People* v. *Sobczak* (1955), 344 Mich 465, 469:

"It has long been established, of course, that conspiracy may be proved by circumstantial evidence, in fact that such is generally the case. *People* v. *Beller,* 294 Mich 464; *People* v. *Pitcher,* 15 Mich 397. But the circumstances must be such as to warrant a fair inference of the facts to be established. The meetings of defendant with Kuzera [a convicted defendant] are as consistent with innocence as with guilt and it is never to be forgotten that a presumption of innocence cloaks our citizens from birth to death."

As for the larceny count, CLS 1961, § 750.356, *supra,* the burden again was not carried by the people. We can look back to *People* v. *Millard* (1884), 53 Mich 63, 70, to again see how far the people's burden must be carried:

"In every criminal case the burden is throughout upon the prosecution. Whatever course the defense deem it prudent to take in order to explain suspicious facts or remove doubts, *yet it is incumbent on the prosecution to show under all circumstances, as a part of their own case, unless admitted or shown by the defense, that there is no innocent theory possible which will, without violation of reason, accord with the facts.*" (Emphasis supplied.)

The prosecution failed to present a theory of the case and proof that excluded all possible theories of innocence explaining Adams' conduct.

The first issue before this Court as to defendant Spann is whether there was sufficient evidence adduced at the preliminary examination to have allowed the examining magistrate to bind the defendant Spann over on the counts of conspiracy, CLS 1961, § 750.505, *supra,* and larceny, CLS 1961, § 750-.356, *supra.*

The code of criminal procedure requires that the magistrate discharge the defendant:

"If it shall appear to the magistrate upon the examination of the whole matter, either that no offense has been committed or that there is not probable cause for charging the defendant therewith." CL 1948, § 766.13 (Stat Ann 1954 Rev § 28.931).

To restate the statute in the positive, all the examining magistrate need find is that an offense has been committed, and that there is probable cause to believe the defendant to have committed it. See *Yaner* v. *People* (1876), 34 Mich 286; *People* v. *Evans* (1888), 72 Mich 367; *People* v. *Davis* (1955), 343 Mich 348; *People* v. *Jackson* (1965), 1 Mich App 207. Thus, the examining magistrate does not sit as a trier of fact, wherein he need weigh the evidence to see if there is proof of guilt beyond a reasonable doubt. As the Supreme Court stated in *People* v. *Davis, supra,* at p 355:

"The statute, CL 1948, § 766.13 (Stat Ann 1954 Rev § 28.931), requires a finding of probable cause. It is not required that the guilt of a defendant be established beyond a reasonable doubt. *People* v. *Asta,* 337 Mich 590."

At the examination held in the case at bar, the record reveals sufficient evidence upon which the magistrate could have bound defendant Spann over for trial. And, to paraphrase *People* v. *Davis, supra,* at p 355, an appellate court will not reverse a finding of probable cause unless there has been a clear abuse of discretion on the part of the examining magistrate. See *People* v. *Dellabonda* (1933), 265 Mich 487; *People* v. *Karcher* (1948), 322 Mich 158. We find no such abuse of discretion herein.

Most of the errors alleged by Spann to have occurred during trial were waived by the defendant's

failure to preserve the record by timely objection. To name just a few, Spann raises a question of the admissibility into evidence of a prior transaction. This Court notes no timely objection made regarding this prior incident, though there was objection made to admission of the garments procured by the police in this prior transaction. Another example of a defense waiver occurred early in trial when the judge instructed the jury regarding a statement of one co-conspirator after the termination of the conspiracy. No objection was made to this instruction by Spann, and even if there had been timely objection, the instruction of the trial court was correct. Timely objection is required to save these questions for review. See *People* v. *Matteson* (1937), 280 Mich 218; *People* v. *Hallman* (1941), 299 Mich 657; *People* v. *Huey* (1956), 345 Mich 120.

Spann also claims on appeal that the police entrapped the defendants, and that this in itself is a ground for reversal. The record reveals no instance when entrapment was raised as a defense at trial. This Court can find no law to support the contention that a defense not asserted at trial can be the basis for reversal on appeal. This Court will not allow the defense to take one tactical approach on trial and then on appeal seek to use another avenue of defense. Appeal as of right affords this Court the opportunity to review what has occurred on trial, but not to prognosticate what might have transpired had the defendant chosen an alternate defense.

The remaining questions raised by Spann regarding the trial itself go to the weight and sufficiency of the evidence presented to the jury. Regarding both counts, the Supreme Court has clearly stated that evidence can be of a circumstantial nature. In *People* v. *Butler* (1934), 268 Mich 408, wherein the defendant was convicted of grand larceny, the Court stated at p 411:

"The undisputed testimony of the witnesses for the plaintiff leads us to the conclusion that the evidence, though circumstantial, justified the verdict."

Again, in *People* v. *Heidt* (1945), 312 Mich 629, a case wherein the defendant was charged with conspiracy, the Court stated at p 639:

" 'Conspiracy may be established by circumstances and may be based on inferences.' *People* v. *Roxborough,* 307 Mich 575, 584, citing *People* v. *Robinson,* 306 Mich 167, 175."

See, also, *People* v. *Garska* (1942), 303 Mich 313; *People* v. *Tenerowicz* (1934), 266 Mich 276; *People* v. *Fields* (1939), 288 Mich 166. In our opinion the evidence in this case, though of necessity circumstantial, was sufficient for conviction of defendant Spann by the jury. The evidence presented leaves no reasonable doubt of the guilt of the accused. *People* v. *Gadson, supra.*

The defense for Spann also raises a question of the "highly prejudicial" nature of the trial judge's secondary instruction to the jury. No timely objection to this instruction was ever made. See *People* v. *Huey, supra.* At the time of this secondary instruction, the jury indicated it had reached a verdict regarding two of the defendants; as to the third defendant, no verdict was ever reached. In any event, the instruction was proper.

The remaining questions raised by Spann are without merit.

Reversed without a new trial as to Leonard Adams.

Affirmed as to Donald Spann.

J. H. GILLIS and QUINN, JJ., concurred.