*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAMETRIA DESHAUN GRANDERSON,

Defendant-Appellant.

UNPUBLISHED
February 11, 2021

No. 350630
Saginaw Circuit Court
LC No. 18-044551-FH

Before: BOONSTRA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of conspiracy to commit breaking and entering with intent to commit a larceny, MCL 750.157a; MCL 750.110(1); breaking and entering with intent to commit a larceny, MCL 750.110(1); and larceny in a building, MCL 750.360. The trial court sentenced defendant to serve three years' probation for each of those convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 7, 2017, a break-in occurred at a Rite Aid pharmacy in Saginaw. A witness, Kevin Westendorf (Westendorf), who lived across the street from the Rite Aid, testified that he heard the sound of the pharmacy's door being kicked. He went outside and saw two people standing in the Rite Aid parking lot. Westendorf could hear them talking about breaking into the Rite Aid. Westendorf also saw one vehicle in the parking lot with a third person inside. He called 911. Westendorf testified that he then saw one man turn and go back toward the Rite Aid, and heard more kicking; Westerndorf thought it sounded like "they were breaking in the back door." He testified that he saw one of the people walking back and forth, five or six times, between the Rite Aid and the parked vehicle.

As several police officers arrived at the Rite Aid, the store alarm went off and the lights came on. Westerndorf and two of the police officers testified that when the lights came on, they heard the sound of a car horn. A man then exited the Rite Aid and ran towards the parked vehicle. Defendant and Darquan Collins (Collins) were inside the vehicle. Defendant and the two men

-1-

were arrested. Many items from the Rite Aid were found piled in front of the vehicle. Defendant denied any involvement or knowledge of the break-in when she was interviewed by the police.

Defendant testified that the vehicle was hers and that she was giving Collins a ride home from her brother's house when she pulled into the Rite Aid parking lot because she felt dizzy from having had too much to drink. She testified that she turned her vehicle off and blacked out, and that Collins was with her in the vehicle when the police arrived. Defendant denied any knowledge of, or participation in, the break-in. Defendant also called an expert witness, Leon McKinney (McKinney), who testified that he had examined defendant's vehicle the previous day, and that the vehicle's horn could not have functioned if the vehicle was turned off. The prosecution informed the trial court that, although McKinney testified that he had prepared an invoice or report for defendant, defendant had not provided it in the course of discovery. Defendant replied that the item was not in the file she had received from her previous attorney. The trial court instructed the jury that it was permitted to consider defendant's failure to provide the report to the prosecution when it was weighing McKinney's testimony.[1]

On May 7, 2019, after having allowed three of defendant's appointed attorneys to withdraw, the trial court granted defendant's request to represent herself and appointed standby counsel. On the first day of trial, June 25, 2019, the trial court asked defendant if she understood that she had the right to appointed counsel, and defendant confirmed that she did; the trial court also asked defendant if she wanted a lawyer to represent her, and defendant said that she did not. The trial court then confirmed that defendant had read and signed a written form waiving her right to appointed counsel and warning her of the dangers of self-representation. The trial court did not discuss defendant's waiver of her right to counsel on the second and third days of trial.

The jury convicted defendant as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict her of conspiracy to commit breaking and entering with intent to commit a larceny. We disagree.

We review de novo a claim of insufficient evidence. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). We are required "to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. This Court "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

In order to prove conspiracy, the prosecution must prove that a defendant "conspire[d] together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act

---

[1] No invoice or report was admitted at trial.

in an illegal manner . . . ." MCL 750.157a. "The gist of a conspiracy is the unlawful agreement." *People v Mass*, 464 Mich 615, 632; 628 NW2d 540 (2001). Upon the formation of the unlawful agreement, the crime of conspiracy is complete. *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). Conspiracy is a specific intent crime; the defendant must have intended "to combine to pursue the criminal objective . . . ." *Id*. "Direct proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties." *Id*. (quotation marks and citation omitted).

Defendant argues that the jury could not have inferred a conspiracy based on the evidence presented at trial, because the evidence concerned the circumstances and her conduct *after* the break-in had been completed. We disagree. Proof that a defendant was a member of a conspiracy is indeed limited to the circumstances that existed during the conspiracy. *People v Huey*, 345 Mich 120, 128; 75 NW2d 893 (1956). However, defendant's role in the conspiracy ended when she was arrested, not when the break-in was completed. See *People v Wilson*, 454 Mich 421, 433; 563 NW2d 44 (1997). Therefore, the jury was permitted to consider, as evidence of conspiracy, the evidence that defendant had waited outside in her vehicle for her co-conspirator, who made several trips to collect stolen items and piled them in front of her vehicle, that defendant's vehicle was the only vehicle in the parking lot when a car horn sounded at the same time the police arrived, and that the man inside the Rite-Aid ran directly towards her vehicle as he was presumably seeking to escape the police.

Moreover, defendant's assertion that all of the evidence of conspiracy presented to the jury followed the completion of the break-in is incorrect. Defendant admitted that she drove Collins to the Rite Aid parking lot before the break-in. Westendorf testified that he was able to hear two men discussing breaking into the Rite Aid from across the street, and was able to view defendant's vehicle well enough to see that a third person was inside the vehicle and was using a cellular phone. Westerndorf was also able to hear the noise of the forced entry. The jury could infer that defendant was present and, despite her testimony to the contrary, that she was conscious during these events.

Taken as a whole, and viewed in the light most favorable to the prosecution, the evidence was sufficient for a reasonable jury to conclude that defendant conspired with at least one other person to act as a lookout and driver while the break-in of the Rite Aid was committed, complete with a prearranged signal indicating either that the police had arrived, or simply that it was time to leave.

Defendant argues, however, that the evidence that her vehicle horn sounded was "rebutted" and therefore could not be relied upon by the jury. Again, we disagree. Defendant presented evidence that, although her vehicle may have been the only vehicle in the parking lot, other vehicles were passing by on the street at around the time the police arrived. Although this presents the possibility that it was the horn from another vehicle that sounded, it does not render the jury verdict unreliable; it is the jury's role to determine the weight and credibility of evidence, and we will not interfere with that determination. See *Unger*, 278 Mich App at 222.

Defendant also notes that McKinney testified that defendant's horn would not have functioned if her vehicle was turned off. However, he also testified that he could not remember why defendant brought her vehicle to him. In addition, although McKinney testified that he prepared a report or invoice for defendant, defendant did not provide a copy of that document,

despite the fact that the prosecutor had filed a demand for discovery that specifically asked for reports of defendant's expert witnesses. The jury was permitted to consider this fact when weighing McKinney's testimony. In any event, there was no evidence that defendant's vehicle was turned off when the horn sounded, other than defendant's own testimony at trial. In fact, a police officer who interviewed defendant at the scene testified that defendant said that she and Collins had been on their way to get food when they pulled into the parking lot so that defendant could "catch her breath" and that they were listening to music when the man ran from the Rite Aid. Mere conflicts in evidence are an insufficient reason to invalidate a jury verdict. *Oros*, 502 Mich at 239.

For these reasons, we conclude, viewing the evidence in a light most favorable to the prosecution, that there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that defendant committed conspiracy to commit breaking and entering with intent to commit larceny. *Id*.

### III. WAIVER OF THE RIGHT TO COUNSEL

Defendant also argues that her waiver of counsel was invalid because the trial court did not substantially comply with MCR 6.005 and *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976). We disagree.

We review de novo the entire record to determine whether a defendant has validly waived the right to counsel. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). We will not "disturb a trial court's factual findings regarding a knowing and intelligent waiver of [Sixth Amendment] rights unless that ruling is found to be clearly erroneous." *Id*. (quotation marks and citations omitted; alteration in *Williams*). In addition, we "indulge every reasonable presumption against waiver" of the right to counsel. *People v Adkins*, 452 Mich 702, 721; 551 NW2d 108 (1996), overruled in part on other grounds by *Williams*, 470 Mich at 641 n 7 (quotation marks and citation omitted).

In Michigan, the right to self-representation is guaranteed by Michigan's Constitution and MCL 763.1. Const 1963, art 1, § 13. The right to self-representation is also implicitly guaranteed by the Sixth Amendment to the United States Constitution. *Faretta v California*, 422 US 806, 819; 95 S Ct 2525; 45 L Ed 2d 562 (1975). "The Sixth Amendment right to counsel is applicable to the states through the Due Process Clause of the Fourteenth Amendment." *Williams*, 470 Mich at 641. However, there is no absolute right "to proceed to trial without counsel." *Anderson*, 398 Mich at 366. A defendant must waive his or her Sixth Amendment right to counsel to proceed *in propria persona*. *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004).

Under MCR 6.005(D), a court may not allow a defendant to initially waive the right to counsel without first:

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer
or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

In *Anderson*, 398 Mich at 367-368, the Michigan Supreme Court outlined three additional requirements for a defendant to validly waive his or her right to counsel. First, "the request must be unequivocal." *Id*. at 267. Second, "once the defendant has unequivocally declared his desire to proceed *pro se* the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily." *Id*. at 368. Third, the trial court must "determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Id*.

Defendant does not argue that the trial court failed to comply with the requirements of MCR 6.005(D)(1) and (2), and the record reflects that the trial court did so. Instead, defendant argues that her waiver of her right to counsel was invalid because she approved of the appointment of standby counsel, and that her waiver request was therefore not unequivocal. We disagree. This Court has held that a defendant who requests standby counsel may still unequivocally waive the right to counsel. *People v Hicks*, 259 Mich App 518, 528; 675 NW2d 599 (2003). And the record reflects that defendant's waiver was indeed unequivocal.

Defendant further argues that the trial court failed to make any inquiry into her competency to validly waive her right to counsel or consider how her communication issues and mental illnesses affected her competency to represent herself. Defendant's assertion is factually incorrect; the trial court asked about defendant's level of education and whether she had ever represented herself. When defendant stated that she was familiar with voir dire, had already written her opening statement and closing argument, and knew the difference between direct examination and cross-examination, the trial court asked how she knew about those things. It further asked whether she knew that the charges against her had elements, and whether she knew what the elements of those charges were. The trial court made multiple inquiries to determine whether defendant was competent to waive her right to counsel and to represent herself.

Nonetheless, defendant argues that the trial court should have considered whether her history of difficulty in communicating with her appointed attorneys and her homelessness during a portion of the proceedings undermined her ability to represent herself. First, it is not clear from the record that defendant was the one responsible for the poor communication in her prior attorney-client relationships. Defendant stated that her previous lawyers did not communicate with *her*, and she presented evidence to the trial court that one of her attorneys had failed to respond to her text messages. Defendant has not presented evidence that her history of disagreement with her appointed attorneys (a history shared by almost every defendant who represents herself) was a reason to deny her requested waiver. *Anderson*, 398 Mich at 367-368.

Defendant also contends that her homelessness during part of the proceedings should have indicated that she was unable to communicate, organize, or focus, and that she was therefore unable to represent herself. However, the fact that defendant may have been homeless does not, itself, prove that she was unable to communicate, and defendant does not explain how her homelessness specifically impacted her ability to waive her right to counsel or represent herself. It is also unclear from the record whether, and to what extent, defendant was homeless before or during trial; defendant's pre-sentence investigation report (PSIR), prepared after trial, states that she was

"recently residing" with her mother until her mother was evicted, forcing her to take up residence at the Saginaw Rescue Mission. We conclude that defendant has not established this factor as a reason for the trial court to deny her requested waiver. *Id.*

Defendant also contends that the trial court should have considered her mental illnesses, because those conditions might have affected her ability to communicate and were relevant to her competency.[2] "A defendant may not waive his or her right to counsel if his or her mental incompetency renders him or her unable to understand the proceeding and make a knowing, intelligent, and voluntary decision." *People v Brooks*, 293 Mich App 525, 542; 809 NW2d 644 (2011), vacated in part, lv den in relevant part 490 Mich 993 (2012). In *Brooks*, this Court stated that "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant." *Id.* (alteration in original; quotation marks and citation omitted). In this case, however, defendant has not identified what specific symptoms of her mental illnesses impaired her ability to represent herself or prevented her from making a knowing, intelligent, and voluntary waiver of her right to counsel. And none of the symptoms listed in *Brooks* appear to have obviously manifested themselves at the waiver hearing or during trial. Defendant has failed to show that the trial court erred by determining that her waiver of her right to counsel was valid. *Anderson*, 398 Mich at 367-368.

Defendant also argues that the trial court erred by failing to reaffirm defendant's waiver of the right to counsel on the second and third days of trial. We disagree. MCR 6.005(E) provides, in part:

> If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,
>
> (1) the defendant must reaffirm that a lawyer's assistance is not wanted . . . .
>
> * * *

The plain language of MCR 6.005(E) requires a court to reaffirm a defendant's waiver of the right to counsel at a subsequent *proceeding*, such as a trial, not at each *day* of a subsequent proceeding. *People v Campbell*, 316 Mich App 279, 291; 894 NW2d 72 (2016), overruled on other grounds by *People v Arnold*, 502 Mich 438 (2018) ("MCR 6.005(E) requires the court to confirm the waiver before a subsequent 'proceeding,' such as a 'trial.' It does not require the trial court to confirm the waiver on each day of trial."). On the first day of trial, the trial court asked defendant if she

---

[2] It is not clear that the trial court knew about any mental illnesses at the time of the May 7, 2019 hearing, when it decided to permit defendant to represent herself. Defendant's mental illnesses, like her housing status, are only discussed in the PSIR, which was prepared after her trial.

understood that she had the right to have a lawyer represent her, and confirmed that defendant did not want a lawyer to represent her. The trial court was not required to reaffirm defendant's waiver of her right to counsel on the second and third days of trial. *Id.* The trial court substantially complied with MCR 6.005 and *Anderson*.

Affirmed.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Michelle M. Rick