### PEOPLE *v.* PETRO.

WEAPONS—CARRYING CONCEALED WEAPONS—EVIDENCE.

> Evidence presented in prosecution for carrying concealed weapons without a license *held,* insufficient to establish guilt beyond a reasonable doubt under a statute which does not raise a presumption as to knowledge of presence of 3 pistols in a so-called secret compartment behind the clock in the dashboard of the car, where it is shown merely that one appellant had driven the car frequently for some weeks before the arrest, that both appellants and another defendant had lived in the same apartment as the owner of the car, that all 3 defendants appeared to be close companions and had used the car on previous occasions (CL 1948, § 750.227).

BUTZEL, BOYLES, and REID, JJ., dissenting.

56 Am Jur, Weapons and Firearms § 9 *et seq.*

Appeal from Recorder's Court for the City of Detroit; Krause (Paul E.), J. Submitted July 29, 1954. (Docket No. 75, Calendar No. 45,545.) Decided April 14, 1955.

Julius A. Petro and Albert S. Wright were convicted of carrying concealed weapons. Reversed.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, *Ralph Garber, Samuel Brezner* and *Samuel J. Torina,* Assistants Prosecuting Attorney, for plaintiff.

*Joseph W. Louisell,* for defendants.

REID, J. (*dissenting*). Defendants together with one Joseph Russo were tried on an information which charged that "on the 30th day of April, A. D. 1951," they then and there carried 3 guns "in a certain vehicle operated or occupied" by them, et cetera, in violation of CL 1948, § 750.227 (Stat Ann § 28.-424), which is as follows:

"Any person who shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him; and any person who shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license to so carry said pistol as provided by law, shall be guilty of a felony, punishable by imprisonment in the State prison for not more than 5 years, or by fine of not more than 2,500 dollars."

The jury acquitted Russo but found appellants guilty. From their conviction and sentence, they have taken an appeal upon leave granted.

On April 30, 1951, one John Dulape, then residing at 2690 West Boston boulevard, apartment 217, Detroit, was the owner of the 1948 Cadillac convertible automobile herein involved. Title to the car had been in his name since December 8, 1949, and the appellants had been staying with Dulape in his apartment. At about 9:30 in the morning of the day involved, the 2 arresting Detroit police officers, John Kellner and James Dunleavy, observed the Cadillac car parked on the north side of Boston boulevard, facing west in the vicinity of the apartment building. The car was unoccupied. The officers stationed themselves in their automobile on Linwood where they could keep the Cadillac under observation. They watched it for possibly 6 hours, until 4 or 4:30 in the afternoon, at which time the arrests, out of which this prosecution arose, were made. The Cadillac was unoccupied between 9:30 and the time of the arrest. A detailed examination of the car at the time of the arrest disclosed nothing of importance but an examination at the police headquarters disclosed a compartment behind the clock on the dashboard in which were concealed 3 pistols, 1 a revolver.

Officer Kellner testified that he noticed the Cadillac on April 26th, 4 days in advance of the arrest. On April 26th it was parked about 30 or 40 feet ahead of where it was parked at the time of the arrests. He further testified that he saw 3 men get in the Cadillac on that occasion, April 26th, and drive away; that Albert Wright was behind the wheel, and Julius Petro in the front seat with Wright, and a third man who resembled Russo was in the car also on that occasion, April 26th. He further testified that he saw the car again on April

27th at the corner of Boston boulevard and that it was unoccupied on that day.

After his arrest, Petro said he had been in the car on different times, that he was in the car the previous night, that he was in Toledo and picked up Russo in the Cadillac. Petro also stated that he lived at 2690 Boston boulevard, apartment 217.

Officer Dunleavy testified that after his arrest, Wright was asked how long he knew the guns were in the car and he said, "I would rather not answer that question." Officer Dunleavy also testified that Wright was the man from whom he got the keys; that Wright said he was driving the Cadillac for about 3 weeks off and on and that no one else drives the car excepting him, that on the day of the arrest he intended to drive the men to Toledo, and was sitting in the car and was prepared to start the same. Officer Kellner testified that at the time of the arrest, Petro had just about all his body in the car and his legs outside. It appears that Petro and Wright both had been in Toledo the day before their arrest and brought Russo with them to Detroit and intended to go back to Toledo on the day of the arrest. Both appellants were from other cities than Detroit, were without steady employment and were riding around together for a considerable number of days before the arrest, and were living in the same apartment.

There is sufficient testimony to support a finding that all 3 defendants, Wright, Petro and Russo, were in the parked car at the time of the arrest.

Defendants summarize the questions involved on this appeal as follows:

1. That there was no proof, as a matter of law, that appellants "carried" weapons in an automobile "occupied" by them, and

2. That there was a failure of proof of the requisite knowledge of the defendants of the presence of the guns in the automobile.

There are certain circumstances that stand out prominently in regard to an apparently free use of the automobile in question other than a use by the person in whose name the title to the car stood: By defendant Petro on the night before his arrest and by reason of his presence in the car on other occasions before his arrest; and, also, the use by defendant Wright. Also prominent is the vacant space behind the clock, called the secret compartment, with the pistols in it. The presence of 3 loaded pistols would indicate that 3 occupants of the car had been arranged for, evidently including defendants who were the actual users of the car. None of defendants had a license to carry concealed weapons.

Defendants had been staying in the same apartment with Dulape, the registered owner of the Cadillac. Under the circumstances disclosed by uncontradicted testimony in this case, the jury would have been justified in concluding that either the owner of the car, Dulape, or defendant Wright put the 3 pistols in the car, and the jury would have been fully justified in concluding that it was highly improbable that Dulape would have left the 3 pistols in the car with defendant Wright in exclusive driving use of the car for 3 weeks, unless he, Dulape, had been in conspiracy together with Wright as to the pistols, for otherwise Dulape would be rendering himself subject to detection and conviction under the herein quoted statute. That therefore Wright put the pistols in the car or had guilty knowledge of the presence of the 3 pistols in the car, would be a justifiable conclusion.

The statement by defendant Wright that he "was driving the Cadillac for about 3 weeks off and on, and that no one else drives the car except him," in-

dicates that Wright had knowledge of the concealed compartment and of the presence of the pistols therein. The presence of the discovered pistols evidenced the actual unlawful purpose of the defendants in driving around together in the car in question.

Defendant Petro's close companionship with Wright, his driving or being present in the car the night before his arrest, and his presence in it on other occasions before his arrest, his evident familiarity with the then present use of the Cadillac and his companionship with the men who were in the actual use of the car and living in the same apartment, all point to his knowledge of presence of the pistols.

The statute requires that the possession shall be intentional. When all the acts of defendants and their associates, together with attendant circumstances disclosed in the record, are considered, there is afforded a sufficient basis for the verdict of the jury finding the guilt of each appellant beyond a reasonable doubt. For construction of the word "carry" in the quoted statute, see *People* v. *Moceri,* 294 Mich 483, in which case conviction of Moceri was sustained where "defendant Ruggerello was in a parked car and defendant Moceri was just getting into the car." Ruggerello did not join in the appeal.

The conviction in the case of each defendant in the instant case should be affirmed.

Butzel and Boyles, JJ., concurred with Reid, J.

Sharpe, J. I am not in accord with the reasons stated by Mr. Justice Reid in affirming the convictions, nor the result arrived at. He bases affirmance upon the following:

"The statement by defendant Wright that he 'was driving the Cadillac for about 3 weeks off and on, and that no one else drives the car except him,' indicates that Wright had knowledge of the concealed compartment and of the presence of the pistols therein. The presence of the discovered pistols evidenced the actual unlawful purpose of the defendants in driving around together in the car in question.

"Defendant Petro's close companionship with Wright, his driving or being present in the car the night before his arrest, and his presence in it on other occasions before his arrest, his evident familiarity with the then present use of the Cadillac and his companionship with the men who were in the actual use of the car and living in the same apartment, all point to his knowledge of presence of the pistols."

It should be noted that at the close of the people's case defendants' attorney made a motion for a directed verdict as to both defendants. The trial court denied the motion and gave the following as his reasons:

"I think it is (a) question of fact. First, there is testimony showing, I am not saying the testimony is true, I am merely saying what the testimony is, to the effect 2 men were definitely seen in the car on a previous occasion, at least one, I believe Russo, and the testimony was a man who looked like Russo, not positive identification, had been seen in the car previously. * * * That Russo, the testimony is, Russo was in the back seat and had been there for a while; Wright was stepping in behind the driver's seat, and also the other defendant was getting in the other side; that their foot was in and (they were) about to sit down or were sitting down, entering the car and upon reaching the car Wright had a key to the car; also the testimony shows the 3 defendants had been in the possession of the car the day before and night before."

Citation of authority is unecessary to establish the principle that the defendant in a criminal case is presumed to be innocent, and that in order to convict him of the crime charged it must be shown by proper evidence that his guilt is established beyond a reasonable doubt. In my opinion there was insufficient evidence to establish a question of fact as to the guilt of defendants.

The statute under which defendants were convicted contains no statutory presumption as to knowledge that the guns were present in the automobile involved, nor can we presume that the legislature meant to imply a statutory presumption of knowledge of possession of firearms. Whenever the legislature desired to create a statutory presumption, it did so by using specific language. See CLS 1952, § 750.535 (Stat Ann 1954 Rev § 28.803), which creates an evidentiary presumption that a dealer in personal property who fails to make reasonable inquiry that the person selling or delivering any stolen property to him has a legal right to do so, shall be presumed to have received such property knowing it to have been stolen. Also, see *People* v. *Smith,* 234 Mich 503.

CL 1948, § 750.230 (Stat Ann § 28.427), creates a presumption that one in possession of a pistol from which the mark of identity has been altered shall be presumed to be the party who altered the identification marks.

It follows that under the statute by which defendants were convicted, there is no presumption that defendants knew the guns were in the hidden compartment of the automobile. In considering other types of convictions in criminal cases, the accused must have had knowledge that he was committing the act which constituted the crime in order for the accused to be convicted. See *People* v. *Norton,* 243 Mich 559.

Prior to 1936 the State of New York had no statutory presumption of possession of firearms. In 1912 the New York court of appeals held that in order to be convicted of illegally carrying a gun on one's person, one must knowingly and voluntarily carry the gun. *People* v. *Persce,* 204 NY 397 (97 NE 877); *People* v. *Andreacchi,* 221 App Div 136 (222 NYS 610).

In *People* v. *Warden of City Prison,* 136 Misc 836 (241 NYS 63), the police officers found a revolver under the driver's seat in the automobile in which the defendants were occupying the rear seat. In reversing a conviction of the defendants for violating the New York statute, which provides that one must "possess" a weapon to be convicted, the court said:

"I am compelled, therefore [by *People* v. *Persce,* 204 NY 397 (97 NE 877); *People* v. *Andreacchi,* 221 App Div 136 (222 NYS 610); *People* v. *Kevlon,* 221 App Div 224 (222 NYS 311)], to discharge the relators. This, and similar cases, establishes the urgent need for legislation making the presence of a forbidden firearm in an automobile or other vehicle presumptive evidence of its possession by all the occupants thereof. Such an amendment would require the occupants of an automobile to explain the presence of the firearm and enable the court to fix the criminal responsibility for its possession."

The facts involved in *People* v. *Andreacchi* and *People* v. *Warden of City Prison, supra,* are similar to the facts in the case at bar. The New York statute, as of that date, like our Michigan statute, contained no statutory presumption as to knowledge that the guns were present in the automobile involved.

We have consistently held that presumptions or inferences cannot rest upon other presumptions or

inferences. In *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich 130, 137, we said:

"It is the province of the board to draw the legitimate inferences from the established facts and to weigh the probabilities from such established facts. *Wilson* v. *Phoenix Furniture Co.*, 201 Mich 531. But the inferences drawn must be from established facts; inference may not be built upon inference, possibilities upon possibilities, or inferences drawn contrary to the established facts, contrary to the undisputed evidence."

Also, see *Glenn* v. *McDonald Dairy Co.*, 270 Mich 346; *Shaw* v. *General Motors Corp.*, 320 Mich 338; *Nightlinger* v. *Giant Super Market*, 334 Mich 90. While the above-cited cases are civil cases, yet, in my opinion, the above rule should be more strictly adhered to in criminal cases.

In the case at bar, in order for the jury to find defendants guilty, the jury had to believe the evidence that defendants had been seen at least once prior to April 30, 1951, in the automobile. From this fact the jury had to infer that the defendants, who were not the owners of the automobile, knew of the hidden compartment behind the dashboard clock, and from this inference the jury had to infer that defendants knew that the guns were in this compartment on April 30, 1951.

It is the duty of courts to reverse criminal convictions based upon an inference upon an inference in the absence of a statutory presumption. My Brother relies on *People* v. *Moceri*, 294 Mich 483, to affirm the conviction. In that case the police officers found a revolver on the floor of the automobile occupied by the defendant. That was an established fact. There was an inference from such fact that defendant had knowledge of the presence of the revolver.

There is no evidence in this case that either of the defendants, on the day in question, operated the automobile. The physical question of fact involved relates only to the occupation of the automobile.

The above *Moceri Case* is authority for the principle that an inference may be drawn from established facts, but is no authority to sustain a false principle that inference may be built upon inference. The *Moceri Case* brings no comfort to the people in order to sustain conviction in the case at bar.

While it may be true that the records of defendants do not inspire a favorable feeling towards them individually, yet, as a proposition affecting society and the proper administration of justice, I am constrained to hold that the convictions should be reversed without a new trial.

CARR, C. J., and KELLY, J., concurred with SHARPE, J.

SMITH and DETHMERS, JJ., concurred in the result.