PEOPLE v. EAVES.

1. EVIDENCE—PRESUMPTIONS—INFERENCES—ESTABLISHED FACTS.
   Presumptions and inferences may be drawn from facts established, but presumption may not rest on presumption or inference on inference.

2. SAME—PRESUMPTION—PROOF BY DIRECT EVIDENCE.
   A presumption must rest upon facts proved by direct evidence and cannot be based upon, or inferred from, another presumption.

3. SAME — CIRCUMSTANTIAL EVIDENCE — CIRCUMSTANCES MUST BE PROVED.
   The circumstances must be proved and cannot be presumed whenever circumstantial evidence is relied upon to prove a fact.

4. CRIMINAL LAW — EVIDENCE — POSSESSION OF NARCOTICS — INFERENCES.
   Evidence showing that (1) the police found a package of heroin, (2) it was on pavement a block from place where police had stopped car in which defendant was riding, (3) officers had seen door on passenger side of car open as the car passed the approximate place where the package was found, and (4) the officers had heard a thud just after the car door opened, held, sufficient to permit jury to find that the package found was thrown from car by defendant without basing an inference upon an inference in prosecution for unlawful possession of a narcotic drug (CLS 1961, § 335.153).

---

REFERENCES FOR POINTS IN HEADNOTES
[1-3, 5]  20 Am Jur, Evidence § 164.
[4, 6, 7]  25 Am Jur 2d, Drugs, Narcotics, and Poisons § 45.
   What constitutes "possession" of a narcotic drug proscribed by § 2 of the Uniform Narcotic Drug Act.  91 ALR2d 810.
[8]  20 Am Jur, Evidence § 273.
[9]  58 Am Jur, Witnesses § 860 et seq.

5. SAME—INFERENCES BASED UPON AN INFERENCE—UNCERTAIN AND SPECULATIVE EVIDENCE.

Statement that an inference cannot be based upon an inference means that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility.

6. POISONS — CONTROL — POSSESSION — NARCOTICS — CONSTRUCTION OF STATUTE.

Statute proscribing *possession* or *control* of any narcotic drug by an unlicensed person is construed as having used the terms *possession* and *control* in their commonly understood sense, and not in a restricted technical sense (CLS 1961, § 335.153);

7. SAME—NARCOTICS—POSSESSION—SUFFICIENCY OF FACTS.

Sufficient facts were presented for jury to find possession of narcotics, as proscribed by statute, where evidence presented established that defendant had had physical possession of the narcotics, by testimony showing police found package of heroin on the pavement a block from the place where police had stopped car in which defendant was riding on the passenger side in the front seat, officers had seen door on the passenger side of the car open as the car passed the approximate place where the package was found, and officers heard a thud just after the car door had opened (CLS 1961, § 335.153).

8. CRIMINAL LAW—DIRECT OR CIRCUMSTANTIAL EVIDENCE—INFERENCES.

A jury in a criminal case may draw reasonable inferences from facts established either by direct or circumstantial evidence.

9. SAME—VERDICT—EVIDENCE—CREDIBILITY.

A jury's verdict in a criminal case must stand if proof of the elements of the crimes alleged was presented to it, as the jury has viewed the witnesses, heard all the testimony, and was in a superior position to determine their credibility.

Appeal from Recorder's Court; Krause (Paul E.), J. Submitted Division 1 March 10, 1966, at Detroit. (Docket No. 964.) Decided October 11, 1966. Leave to appeal denied by Supreme Court March 20, 1967. See 379 Mich 756.

Evelyn Eaves was convicted of unlawful possession of a narcotic drug. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Michael J. Connor,* Assistant Prosecuting Attorney, for the people.

*John D. O'Connell,* for defendant.

LESINSKI, C. J. Defendant appeals a jury conviction for unlawful possession of narcotics in violation of PA 1952, No 266, CLS 1961, § 335.153 (Stat Ann 1957 Rev § 18.1123).

According to the testimony, on September 25, 1963, at about 2:15 a.m., two Detroit plainclothes officers, Patrolmen Brown and Travis, in an unmarked police car assigned to a car boosting detail,* saw an automobile with one headlight and pulled alongside the car at Larned and Mt. Elliot streets and attempted to get the driver to pull over to the curb. The car did not stop, but rather turned south onto Jefferson avenue and picked up speed—to approximately 45 m.p.h. The car was apprehended several blocks later, east of Elmwood street on Jefferson avenue. One Samuel Peeples was alleged to have been the driver. Defendant Evelyn Eaves was a passenger in the car.

Patrolman Brown testified that before the apprehension of this vehicle, he had waived his badge out the window at them, and that the occupants of the car were looking at him at the time. He further testified that subsequent to this the door of the passenger side, where defendant was seated, opened and a package came out of the vehicle and hit the pavement. The patrolmen were unable to testify as to whether the interior lights in the vehicle went

---

* The object of this detail is to find and apprehend people breaking into business places and any street crimes that come to the officer's attention. (Record on appeal.)

on when the door opened, or whether the defendant threw the package therefrom. Both officers testified to hearing a thump. The vehicle, which was continuously in the officers' view, was stopped approximately one block after this alleged incident took place. The officers went to the driver's side of the car, observed empty beer containers in the back seat thereof, and Officer Brown testified that he at first assumed that a beer container was what had been thrown from the car. The officers put the driver in their car and left the defendant in the driver's car. They left to check the driver on the call box, and en route to the call box they recovered a package which contained $5,000 worth of heroin.

Brown estimated that from the time the officers first saw an object on the pavement until they recovered the package of heroin some three to five minutes had passed. Brown testified that he had heard the object hit the pavement with a thud, but he was unable to determine whether it had come to rest or was still moving at the time. The officers could recall no pedestrian or other vehicular traffic during the relevant time interval.

Upon recovery of the package, the officers handcuffed the driver and went back to the place where they had left the defendant. She was not in the car, but was found walking on the sidewalk a block and a half away. When the patrolmen left with the driver to go to the call box, one of the officers told the defendant that he would probably be right back. She was not told that she was under arrest at that time, nor was she told specifically to await the officers' return.

Although the police report named Sam Peeples, the alleged driver, as a suspect, he had been released after questioning on September 26, 1963, and the police were unable to locate him up to the time

of the trial in October, 1964. The police report made pursuant to the incident made no mention of the defendant's having *thrown* the package from the car.

Defendant testified that she was from New York; that she had been staying on Fort street, but did not remember the address; that on the night in question she had started from the Fort street residence to get toothache medicine; and that the driver of the vehicle was a neighbor whose offer of a ride she had accepted. She stated that she had left New York where her husband and children lived because of marital difficulties.

At the time of her arrest, the defendant gave her name as "Johnson" rather than "Eaves." Several other inconsistencies in her testimony were also uncovered during the course of the trial which, although irrelevant in the main to the fact situation, were effective in diminishing the credibility of her story which, in essence, was a denial of the crime alleged.

On appeal, it is the defendant's theory that the people's case amounted to an inference based on another inference which was insufficient to prove that defendant was guilty of the offense as charged; that therefore the conviction on this evidence as adduced at trial was contrary to law; and that her guilt was not established beyond a reasonable doubt.

A recent annotation, 5 ALR3d 100, 104 (1966), in discussing anew the legal theory urged upon this Court by the defendant-appellant, that an inference cannot be based upon an inference, said:

"The discussion of the legal effects of presumptions and inferences has evoked perhaps as much cloudy thinking and confusion of terminology as any other area of the law."

The annotation cites *Busam Motor Sales, Inc.,* v. *Ford Motor Co.* (SD Ohio), 85 F Supp 790, for the applicable Michigan position. In the *Busam Case, supra,* at 795, the court referred to previous Michigan case law that "presumptions and inferences may be drawn from facts established, but may not rest presumption on presumption or inference on inference." *Busam* further quoted 20 Am Jur, Evidence, § 164:

" 'The decisions are generally agreed that a presumption must rest upon facts proved by direct evidence and cannot be based upon, or inferred from, another presumption. Thus whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and cannot be presumed.' "

In order to determine if the people's case was one where "inference was based upon inference," it is essential to analyze the facts which this case presented, and upon which the case was built.

1. At approximately 2:30 a.m. a package of heroin was found by the police.

2. The package was found on the pavement a block from the place where the police had stopped the car in which defendant was riding in the front seat on the passenger side.

3. The officers had seen the door on the passenger side of this car open as the car passed the approximate place where the package was found.

4. The officers had heard a thud just after the door of the car opened.

From these facts, could the jury have found that the package found was thrown from this car by the defendant without basing an inference upon an inference? We believe that it could. There are facts established by the evidence on which the jury could base its verdict. The Indiana court expressed in

succinct language what is meant by the inference theory in *Shutt* v. *State* (1954), 233 Ind 169, 174 (117 NE2d 892, 894):

"What is actually meant by the statement found in many cases, that an inference cannot be based upon an inference, is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility."

*People* v. *Petro* (1955), 342 Mich 299, is relied on heavily by defendant for the proposition that "inference may not be built upon inference." The statement is unquestionably a part of Michigan jurisprudence and is not questioned here. Rather, it is inapplicable to the instant case. In *Petro,* the defendants were accused of unlawful possession of firearms in violation of CL 1948, § 750.227 (Stat Ann 1962 Rev § 28.424). The fact situation in *Petro,* as set forth by the Court, is easily distinguishable from that which appears in the present case. As was said in *Petro, supra,* at 308:

"In the case at bar, in order for the jury to find the defendants guilty, the jury had to believe the evidence that defendants had been seen at last once prior to April 30, 1951, in the automobile. From this fact the jury had to infer that the defendants, who were not the owners of the automobile, knew of the hidden compartment behind the dashboard clock, and from this inference the jury had to infer that the defendants knew that the guns were in this compartment on April 30, 1951."

The *Petro* Court distinguished its holding there from that of *People* v. *Moceri* (1940), 294 Mich 483, saying at pp 308, 309:

"In that case [*Moceri*] the police officers found a revolver on the floor of the automobile occupied by the defendant. *That was an established fact.*

There was an inference from such fact that defendant had knowledge of the presence of the revolver. * * *

"The above *Moceri Case* is authority for the principle that *an inference may be drawn from established facts,* but is no authority to sustain a false principle that inference may be built upon inference." (Emphasis supplied.)

It is obvious that Michigan law is in accord with that previously cited from *Shutt, supra,* where that court also stated:

"It may be true that appellant's guilt must be established by inference drawn from circumstantial evidence. However, these inferences are not based upon uncertain or speculative evidence but upon proven facts which are, under the surrounding circumstances in this case, sufficient to support an inference of guilt."

From the fact that the package was found at 2:30 a.m. on the pavement a block from the place where police stopped the car in which the defendant was riding, and at the approximate spot where the officers had seen the car door open and heard something hit the ground, and from the further fact that it was the door on the passenger side where defendant was sitting which had opened, the jury could find that defendant threw the package from the car.

The trial court did not err in permitting the jury to make this inference from the facts established, in keeping with past judicial thinking which has kept the line between the permissible and impermissible carefully drawn in Michigan law.

Defendant's second contention on appeal is that her conviction was contrary to law and the evidence, and against the weight of the evidence. Here, the

argument centers on the theory that possession was not conclusively established.

In *People* v. *Harper* (1962), 365 Mich 494, the Michigan Court had occasion to analyze the statute dealing with illegal possession of narcotics as the appellant there raised the question of whether the proofs were sufficient to sustain the conviction. The *Harper* Court, in affirming the conviction, discussed the social problem which resulted in this legislation and defined the meaning of "possession" in this statute at p 506:

"That the legislature used the words 'possession' and 'control' also in their commonly understood sense, and not in a restricted, technical sense, is apparent from the language used to describe the other acts similarly forbidden."

The Court further construed the scope of "possession" at p 507:

"The possession forbidden is not that possession we know in the law of property, or of torts, which is described technically in terms of control or its equivalent.   *   *   *

"The possession of narcotics forbidden by the Michigan act is broad enough to include narcotics knowingly placed in the trunk of one's automobile as well as narcotics held in one's hands."

Defendant cites two Michigan cases to support her second contention, neither of which are applicable to the case at bar.

In *People* v. *Harris* (1960), 358 Mich 646, 647 "the only evidence that could possibly justify a finding of guilt was a fingerprint upon the sack containing the marijuana cigarettes, which fingerprint was identified as that of defendant." The sack was found in an apartment and defendant didn't live there. Counsel for the people admitted to the Court that this was not sufficient evidence

to sustain the conviction. This recital of the facts suffices to distinguish *Harris* from the case at bar.

The other Michigan authority on which defendant relies also fails to give her argument the essential substance necessary for a reversal. In *People* v. *Stein* (1933), 265 Mich 610 (92 ALR 481), the violation alleged was the carrying of dangerous weapons without a license, and the issue which the Court had to determine was the legality of the arrest, where the officers arrested the defendant on general suspicion. The Court's holding in that case that such an arrest was unjustified is of continuing validity, but it has no bearing on the facts of the instant case.

On the basis of *Harper, supra,* it is clear that the people presented sufficient facts for the jury to find the "possession" proscribed by the statute. The evidence presented by the prosecution, if believed by the jury, established that the defendant had had physical possession of the heroin. In *Harper, supra,* mere knowing consent to the placing of narcotics in the trunk of one's car was held to be sufficient possession.

The defendant's question as to the weight of the evidence is answered in *People* v. *Spann* (1966), 3 Mich App 444, 456, 457, where this Court reaffirmed prior Michigan case law that circumstantial evidence can support conviction.

Defendant contends that the guilt of the defendant was not established beyond a reasonable doubt. We refer again to *People* v. *Spann, supra,* wherein we reversed as to one defendant and affirmed as to the other. In *Spann, supra,* at 451, this Court said:

"In reviewing a jury determination in a criminal appeal, this Court must tread lightly, as the jury viewed the witnesses, heard all the testimony, and was in a superior position to determine the credibility of all that passed before it."

Defendant says that car doors sometimes open without being touched; that the package could have fallen out without being thrown out; or, in the alternative, that the package might have come from another source.

Not only did the jury hear the evidence and presumably reject such tenuous arguments, but also defendant overlooks the crucial word "reasonable" in the phrase "beyond reasonable doubt." In the face of the circumstances presented to the trier of fact and extensively reviewed here, it cannot be said that such facts were not sufficient to convince the jury beyond a reasonable doubt.

Affirmed.

T. G. KAVANAGH, J., concurred.

Although the late Judge WATTS was a member of the panel to which this matter was submitted, he took no part in the decision of this case.