PEOPLE v MANCILL

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—JURY—FINDER OF FACT.

The jury is the sole judge of all of the facts presented and it may choose to believe or disbelieve any or all of the evidence; because the jury is the sole judge of all the facts, it can choose without any apparent logical basis what to believe and what to disbelieve.

2. CRIMINAL LAW—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—TRIER OF FACT.

It is for the trier of fact to determine, where the evidence is circumstantial only, whether the prosecution has negated every reasonable theory consistent with the defendant's innocence of the crime charged.

DISSENT BY R. M. MAHER, J.

3. CRIMINAL LAW—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—INFERENCES—ESTABLISHED FACTS.

*A jury may draw reasonable inferences from established facts, but whenever circumstantial evidence is relied upon to prove a fact the circumstances must be proved and cannot be presumed; thus while a defendant's guilt can be established by inference drawn from circumstantial evidence, the circumstantial evidence on which the inference is based must itself be proved.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury § 3.
[2, 3, 8] 30 Am Jur 2d, Evidence § 1125.
[3, 4] 29 Am Jur 2d, Evidence § 166.
Modern status of the rules against basing an inference upon an inference or a presumption upon a presumption. 5 ALR3d 100.
[5] 40 Am Jur 2d, Homicide § 56.
[6–8] 30 Am Jur 2d, Evidence § 1172.
[7] 75 Am Jur 2d, Trial § 532.

4. CRIMINAL LAW—EVIDENCE—INFERENCES—PROOF BEYOND A REA-
   SONABLE DOUBT.

   *A defendant's guilt cannot be established when predicted on an
   inference derived from another inference; such a leap from
   inference to inference is irreconcilable with the requirement of
   proof beyond a reasonable doubt.*

5. HOMICIDE—MANSLAUGHTER—VOLUNTARY MANSLAUGHTER—ELE-
   MENTS.

   *A defendant's conviction for the offense of voluntary manslaugh-
   ter requires that the following elements be proven (1) that a
   person died, (2) that this death was caused by the defendant, (3)
   that the defendant caused the death without lawful justification
   or excuse, and (4) that the defendant intended to kill or
   consciously created a very high risk of death with knowledge of
   the probable consequences of the act.*

6. CRIMINAL LAW—EVIDENCE—SUFFICIENCY OF EVIDENCE—TEST.

   *The test for determining whether sufficient evidence exists to
   support a defendant's conviction is: the evidence is insufficient
   if it could not support a finding of guilty beyond a reasonable
   doubt because one or more of the essential elements of the
   crime is not proved.*

7. HOMICIDE—MOTIONS—DIRECTED VERDICT—EVIDENCE—LACK OF
   PROOFS.

   *A defense motion for a directed verdict at the close of the
   prosecution's case in a trial on a homicide charge should have
   been granted where permissible proof of an essential element of
   the crime was not presented to the jury which was not, there-
   fore, in the proper position to make a determination of the
   defendant's guilt.*

8. CRIMINAL LAW—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—REASONA-
   BLE THEORY OF INNOCENCE.

   *The prosecution must present evidence that not only points to a
   defendant's guilt but must also present evidence that negates
   any reasonable theory of innocence in order to obtain a convic-
   tion based upon circumstantial evidence; it is incumbent upon
   the prosecution to show that there is no innocent theory which
   will, without violation of reason, accord with the facts.*

Appeal from Recorder's Court of Detroit, Dalton
A. Roberson, J. Submitted February 9, 1977, at

Detroit. (Docket No. 28292.) Decided August 8, 1977. Leave to appeal applied for.

Joseph H. Mancill was convicted of voluntary manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Robert M. Morgan,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: M. J. KELLY, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

M. J. KELLY, P. J. Defendant was charged with first-degree murder, MCLA 750.316; MSA 28.548, and murder in the perpetration of rape, MCLA 750.316; MSA 28.548. At the conclusion of plaintiff's case, the prosecutor consented to dismissal as to the felony-murder charge. Defense counsel then moved for directed verdict on the premeditated first-degree murder count and all lesser included offenses. The trial court reduced the charge to second-degree murder, left open the question of lesser included offenses and at the close of all proofs included a charge as to voluntary manslaughter, MCLA 750.321; MSA 28.553. The defendant was jury convicted of manslaughter, sentenced to 5 to 14 years in prison and appeals of right raising three issues. The main issue and the only one we feel requires discussion is as to the sufficiency of the evidence.

The victim, a 17 year-old girl, was found strangled to death lying near a residential street corner

between the curb and the sidewalk about 7:40 a.m. on September 30, 1975. The evidence against the defendant was circumstantial. The victim's brother testified that the defendant, whom he had never seen before, picked the victim up at their house in the mid-afternoon of September 29, 1975. Defendant was employed as a cab driver and picked up the victim in his cab. A brother and sister of the defendant testified that the victim was brought to their house in the late afternoon or early evening of the same day by the defendant. Defendant, the brother and sister, the victim and others listened to music and drank rum at the Mancill residence. A witness who had been a fare in that cab the following morning testified that she was picked up by the defendant before 7 a.m. on September 30th in the vicinity of the place where the body was found.

The medical examiner testified that the victim was strangled to death about 2 to 2-1/2 hours after having eaten Chinese food. He found evidence of sexual intercourse and oral and anal sperm residue. Defendant's mother admitted that defendant had told her he had been messing around with a girl named Valerie and that Valerie was going to cause him some trouble. The victim's name was Valerie Griffin. A hotel operator identified a registration card bearing the signature Mr. and Mrs. Mancill, dated September 29, 1975, indicating check-in time 9:15 p.m.; check out time, 11:15 p.m. A girl friend of Valerie's testified that she had received a phone call in the early morning hours of September 30th wherein Valerie stated she was home. Valerie's brother Willie testified that he was home and awake during the early morning hours of that day and that Valerie did not come home.

The defendant did not testify but a written and signed statement given to the police by the defendant was read to the jury. Defendant admitted that he had picked up Valerie Griffin in front of her house the afternoon before her death. He said they went to a bar for a while, then to the family house where they and defendant's brothers and sisters and a friend drank rum and beer. He said that he and the victim then left in his cab and went to another bar. That they later went to a Chinese Restaurant where Valerie got a carryout order, that they then proceeded to Junior's Hotel where they registered as Mr. and Mrs. Mancill. Various sexual activities were described and then the statement was:

" 'Then it was time to go and she did not wash up before we left.

" 'I left her on Mack and St. Jean. She was supposed to be getting on the bus. I got in my cab and picked up a guy right after I left her.' "

Although there is a jumble of confusion about the hours on September 29th there is rough harmony until the night of the 29th turned into the day of the 30th. The defendant's wife by whom he had two small children testified that defendant was at her home on the east side of Detroit that early morning:

"Q What time did he come home?

"A I would say about between twelve and one o'clock, somewhere around in there.

"Q All Right. What time did he leave in the morning, if he left?

"A I would say about five or six.

"Q Did he sleep anywhere in your apartment that night?

"A Yeah.

"Q Where?
"A In bed."

This testimony was vigorously challenged by the prosecuting attorney because on cross-examination the defendant's wife continually stated that the day involved was a Friday that she was talking about whereas in fact the September 29th was on a Monday and the body was found on Tuesday, the 30th. The jury of course was the one to assess her credibility.

The doctor who performed the autopsy stated that her stomach contained undigested fresh food eaten not more than 2 or 2-1/2 hours before death, which death was caused by manual strangulation. Defendant states that the fundamental question on appeal is whether the jury must have had a reasonable doubt that it was the defendant who killed the deceased. We hold that a jury submissible issue was framed.

"The jury is the sole judge of all of the facts presented. It may choose to believe or disbelieve any or all of the evidence. That is the essence of a right to a jury trial. * * * Because the jury is the sole judge of *all* the facts, it can choose, without any apparent logical basis, what to believe and what to disbelieve." *People v Chamblis,* 395 Mich 408, 420; 236 NW2d 473 (1975).

We hold that the people presented circumstantial evidence of defendant's guilt to the jury because sorting out the conflicts in the testimony the jury could have disbelieved defendant's exculpatory statements and could have inferred that defendant, on a sexual and alcoholic binge with the victim, strangled her and tossed her body on the ground sometime during the early morning hours of September 30th. It is for the jury to determine

whether it was logical for her to have tripped off
to catch a bus after the events of September 29th;
the jury saw the defendant's wife and could have
disbelieved her testimony. The jury was not re-
quired to accept the defense theory that a phan-
tom killer murdered her sometime after defendant
went on his way to pick up a fare (of which there
was no evidence).

Actually what the defense urges on us is that we
take the exculpatory items contained in his state-
ment and hold that these exculpatory statements
require us to find a reasonable hypothesis incon-
sistent with guilt and consistent with innocence. If
the defendant's statement had not been admitted
in any particular we would have had evidence that
the victim willingly disappeared into the defend-
ant's company; that they indulged for hours in
drinking and stopping off from place to place; that
they registered in a hotel showing a check-in time
of 9:15 and a check-out time of 11:15 (which may
mean nothing more than that the room was paid
for for two hours) the night before the death; that
Chinese food was purchased and carried out and
contained in the victim's intestines; that the body
was found semi-clothed with the purse lying
nearby and with jewelry unremoved; that defend-
ant's presence was unaccounted for until shortly
before the body was found when he picked up a
fare within a few blocks of that vicinity.

Defendant also asks us to find that since the
jury returned a verdict of voluntary manslaughter
they must have had a reasonable doubt as to the
homicide or they would have found him guilty of
second-degree murder. This interesting issue may
cause some consternation at higher levels but we
are required to follow the Supreme Court decisions
of this state which mandate the giving of instruc-

tions on included offenses whether the trial judge believes the evidence supports the lesser charge factually or not. "It is for the trier of fact to determine if the prosecution has 'negate[d] every reasonable theory consistent with the defendant's innocence of the crime charged'." *People v Fuller,* 395 Mich 451, 455; 236 NW2d 58 (1975).

Affirmed.

J. H. GILLIS, J., concurred.

R. M. MAHER, J. *(dissenting).* Defendant was convicted of voluntary manslaughter on the basis of circumstantial evidence. A jury may draw reasonable inferences from established facts, but whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and cannot be presumed. *People v Eaves,* 4 Mich App 457; 145 NW2d 260 (1966). Thus, while a defendant's guilt can be established by inference drawn from circumstantial evidence, the circumstantial evidence on which the inference is based must itself be proved. Guilt cannot be established when predicated on an inference derived from another inference. Such a pyramiding of inferences is impermissible. *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974). The leap from inference to inference is irreconcilable with the requirement of proof of guilt beyond a reasonable doubt. *People v McGregor,* 45 Mich App 397; 206 NW2d 218 (1973).

In the present case, defendant was convicted of voluntary manslaughter. The elements of this offense are: (1) that a person died; (2) that this death was caused by the defendant; (3) that the defendant caused the death without lawful justification or excuse; and (4) that the defendant intended to kill or consciously created a very high risk of death with knowledge of the probable conse-

quences of his act. 2 Michigan Criminal Jury
Instructions 16:4:01, p 16-137.

In determining whether sufficient evidence ex-
ists to support the conviction, the test is as follows:
the evidence is insufficient if it could not support a
finding of guilty beyond a reasonable doubt be-
cause one or more of the essential elements of the
crime is not proved. *People v Smith,* 73 Mich App
463, 474; 252 NW2d 488 (1977).

In this case, the only way in which at least one
of the elements of the crime—that defendant
caused the death—can be proved is by inference
based not on proven fact but on another inference.

From the fact that defendant and the victim
were together on the evening of September 29
from 9:15 to 11:15, it may be inferred that they
were together later when the victim was killed.
From defendant's presence at the time the victim
was killed, it may be inferred that defendant
killed her. However, this is drawing the crucial
inference of guilt from another inference, defend-
ant's presence.

Likewise, from defendant's presence in the area
where the body was found, it may be inferred
defendant was present when the victim died. From
the inference of defendant's presence, one may
draw the inference that defendant was the killer.
But, again, proof of this element of the crime is
based on an impermissible pyramiding of infer-
ences. The necessary element of the crime alleged
remains unproved. See *People v Atley, supra.*

This same analysis is applicable to the possible
motive of defendant (inferred from his statement
to his mother that the victim was going to cause
him some trouble) and to the undigested food
found in the victim's stomach at the autopsy. All
such evidence relies on leaps from inference to

inference and cannot be used to establish the requisite element of the crime beyond a reasonable doubt. *People v McGregor, supra.*

The motion for a directed verdict requested by defense counsel at the close of the prosecution's case should have been granted.

The evidence offered by the prosecution was insufficient. Permissible proof of an essential element of the crime was not presented to the jury which was not, therefore, in the proper position to make a determination of defendant's guilt. *People v Spann,* 3 Mich App 444; 142 NW2d 887 (1966).

In addition to the prohibited pyramiding of inferences, the circumstantial evidence presented by the prosecution does not negate every reasonable theory consistent with defendant's innocence. In order to obtain a conviction upon circumstantial evidence, the prosecution must present evidence that not only points to defendant's guilt but also negates any reasonable theory of innocence. *People v Talley,* 67 Mich App 239; 240 NW2d 496 (1976), *People v Wingfield,* 62 Mich App 161; 233 NW2d 220 (1975), *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972). It is incumbent on the prosecution to show that there is no innocent theory possible which will, without violation of reason, accord with the facts. *People v Combs,* 69 Mich App 711; 245 NW2d 338 (1976).

There is a reasonable possibility that defendant was not present when the victim was killed. It is consistent with the evidence presented and not illogical. Since the prosecution's evidence did not exclude this reasonable theory, the circumstantial evidence was insufficient to support a finding of defendant's guilt beyond a reasonable doubt. *People v Talley, supra,* at 243–244. I would reverse defendant's conviction.