PEOPLE v ORSIE

Docket No. 30864. Submitted January 4, 1978, at Grand Rapids.—
Decided May 8, 1978. Leave to appeal applied for.

Billie J. Orsie was convicted by a jury in St. Joseph Circuit Court,
Robert E. A. Boyle, J., of attempting to break and enter a safe
with intent to commit larceny and of willfully or maliciously
burning a building. On appeal, defendant alleges as reversible
error that tracking-dog evidence introduced at trial lacked
sufficient foundation for introduction and that his conviction on
the circumstantial evidence introduced amounted to piling
inference upon inference from the same evidence. Defendant
appeals. *Held:*

1. Four conditions precedent must be satisfied before track-
ing-dog evidence is to be admitted: (a) it is necessary to show
that the handler is qualified to handle the dog; (b) it must be
shown that the dog was trained and accurate in tracking
humans; (c) it is necessary to show that the dog was placed on
the trail where circumstances indicate the culprit has been;
and (d) it is necessary to show that the trail had not become
stale when the tracking occurred.

2. Failure to object to admission of evidence precluded appel-
late review.

3. There is nothing inherently wrong with basing a valid
inference upon a valid inference.

4. What is actually meant by the rule against basing an
inference upon an inference is that an inference cannot be
based upon evidence which is uncertain or speculative or which
raises merely a conjecture or possibility.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 378, 379.
30 Am Jur 2d, Evidence § 1146.
Evidence of trailing by dogs in criminal cases. 18 ALR3d 1221.
[2] 75 Am Jur 2d, Trial § 166.
[3–5] 29 Am Jur 2d, Evidence §§ 166, 211.
Modern status of the rules against basing an inference upon an
inference or a presumption upon a presumption. 5 ALR3d 100.
[5] 30 Am Jur 2d, Evidence §§ 1170–1172.
[6] 30 Am Jur 2d, Evidence § 1125.

R. M. MAHER, J., concurred with the affirmation of defendant's conviction for attempting to break or enter a safe with intent to commit larceny but dissented from the affirmation of defendant's conviction of willfully or maliciously burning a building and from the majority's abandonment or the "no inference upon an inference" rule. He would hold that pyramiding of inferences is improper and that the prosecution, to sustain a conviction upon circumstantial evidence, must present evidence that not only points to defendant's guilt but also negates any reasonable theory or innocence.

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—TRACKING-DOG EVIDENCE—ADMISSIBILITY—PROPER FOUNDATION.

   Tracking-dog evidence is admissible in criminal cases where a proper foundation is laid showing that (1) the handler is qualified to handle the dog; (2) the dog is trained and accurate in tracking humans; (3) the dog was placed on the trail where circumstances indicate the culprit to have been; and (4) the trail had not become stale when the tracking occurred.

2. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRESERVING QUESTION.

   Failure to object to the admission of evidence precludes appellate review.

3. CRIMINAL LAW—EVIDENCE—INFERENCES—INFERENCE BASED ON INFERENCE.

   There is nothing inherently wrong or erroneous in basing a valid inference upon a valid inference; what is actually meant by the statement that an inference cannot be based upon an inference is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility.

CONCURRENCE IN PART, DISSENT IN PART BY R. M. MAHER, J.

4. CRIMINAL LAW—EVIDENCE—INFERENCES—INFERENCE BASED ON INFERENCE.
   *Pyramiding of inferences is impermissible.*

5. CRIMINAL LAW—EVIDENCE—INFERENCES—INFERENCE UPON AN INFERENCE.

   *The "no inference upon an inference" rule cannot be abandoned because a simpler concept is unsuitable to the complex nature of the evidentiary questions involved and because, in certain*

.

*cases, abandonment would deprive a defendant of his right to
have each element of the crime proven beyond a reasonable
doubt.*

6. Criminal Law—Prosecutors—Evidence—Circumstantial Evidence—Burden of Proof.

*The prosecution, to obtain a conviction upon circumstantial evidence, must present evidence that not only points to defendant's guilt but also negates any reasonable theory of innocence.*

*Kathleen M. Cummins,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. F. Walsh, P. J., and R. M. Maher and Beasley, JJ.

Beasley, J. Defendant, Billie Joe Orsie, was convicted by a jury, under count one, of attempting to break or enter a safe with intent to commit larceny in violation of MCL 750.531; MSA 28.799 and, under count two, of wilfully or maliciously burning a building in violation of MCL 750.73; MSA 28.268. Under count one, he was sentenced to not less than 10 nor more than 15 years in prison and, under count two, he was sentenced to not less than 6 years 8 months nor more than 10 years, the sentences to run concurrently. He appeals as of right, raising two issues which he claims require reversal.

First, defendant claims there was no sufficient foundation upon which to admit tracking-dog evidence. In accordance with the majority view, Michigan admits tracking-dog evidence.[1] But, four conditions precedent must be satisfied before such evidence is admitted. They are: 1) it is necessary to show that the handler is qualified to handle the dog; 2) it must be shown that the dog was trained and accurate in tracking humans; 3) it is necessary

[1] *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972); *People v Norwood,* 70 Mich App 53; 245 NW2d 170 (1976).

to show that the dog was placed on the trail where circumstances indicate that the culprit was; and 4) it is necessary to show that the trail had not become stale when the tracking occurred.[2]

Defendant claims foundation was lacking as to the dog's training and accuracy in tracking humans.

Review of the record tends to support defendant's assertion. However, no objection was made at trial by defendant respecting the qualifications of either the tracking dog or his owner-trainer. We are, therefore, left without evidence concerning the experience of the tracking dog and his owner-trainer. Since no objection was made, perhaps defense counsel was satisfied as to their qualifications and, thus, waived his right to object.

Failure to object to admission of evidence precludes appellate review; the question is deemed not preserved for appellate review.[3]

Under MCL 769.26; MSA 28.1096, improper admission of evidence is not a basis for reversing or granting a new trial unless "after an examination of the entire cause it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice". In this case, there was not any manifest injustice in admitting the tracking-dog evidence. The testimony indicated that the officer could visually follow the tracks in the snow of shoes similar to those worn by defendant. The shoes left a distinctive print in the snow which was fully described in the testimony. The trail led from the location of the crime to the basement of an apartment building where defendant was apprehended hidden on a ledge. Thus, while the tracking-dog evidence may be described as cumula-

---

[2] *People v Harper, supra; People v Norwood, supra.*

[3] *People v Miller,* 16 Mich App 647; 168 NW2d 408 (1969).

tive, its addition to the overwhelming proofs against defendant did not constitute a miscarriage of justice.

Defendant also claims that the circumstantial evidence used to convict him constituted piling inference on inference based on the same evidence.

In support, defendant cites *People v Atley*.[4] As indicated in *Atley*,[5] the "no inference upon an inference" doctrine is a difficult concept at best.

In *Atley, supra,* the Court continues to pay lip service to the now generally discredited "no inference upon an inference" terminology. Indication of the ill repute in which this doctrine is held, is the following from Wigmore on Evidence:[6]

"It was once suggested that an 'inference upon an inference' will not be permitted, i.e. that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by several Courts, and sometimes actually enforced." (Footnotes omitted.)

"There is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. * * * In these and innumerable daily instances we build up inference upon inference, and yet no Court (until in very modern times) ever thought of forbidding it."

A similar view is expressed in *People v Eaves*,[7] citing with approval. 5 ALR3d 104–105, which states:

"The discussion of the legal effects of presumptions and inferences has evoked perhaps as much cloudy

---

[4] 392 Mich 298; 220 NW2d 465 (1974).

[5] 392 Mich 298, 315; 220 NW2d 465 (1974).

[6] 1 Wigmore, Evidence (3d ed), § 41, pp 434–436.

[7] 4 Mich App 457, 461; 145 NW2d 260 (1966).

thinking and confusion of terminology as any other area of the law.

\* \* \*

"The origin of the so-called rules against basing an inference upon an inference or a presumption upon a presumption is obscure, but statements and applications thereof appeared early in the reports and, despite the almost unanimous criticisms of legal scholars and of those courts which have gone into the matter at any length, the 'rules' have shown amazing vitality, \* \* \* ." (Footnotes omitted.)

In *Atley,* a jury convicted defendant of three counts; one, conspiracy to sell marijuana, two, unlawful possession of marijuana, and three, unlawful control of marijuana. The trial judge vacated and dismissed the convictions for unlawful possession and unlawful control of marijuana and reduced the sentence on the conspiracy conviction. The Supreme Court reversed the conviction saying it was not "a fair inference" to infer the ultimate fact of conspiracy to sell from joint acquisition.[8] The underlying theory of the cases that use the no inference on an inference terminology is well and accurately stated in *People v Helcher,*[9] which cites an often quoted Indiana case as follows:

" 'What is actually meant by the statement found in many cases, that an inference cannot be based upon an inference, is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility.' *Shutt v State* (1954), 233 Ind 169 (117 NE2d 892, 894), quoted approvingly in *People v Eaves* (1966), 4 Mich App 457." (Footnote omitted.)

Similarly, while we exercise the caution suggested

---

[8] 392 Mich 298, 314; 220 NW2d 465 (1974).

[9] 14 Mich App 386, 390; 165 NW2d 669 (1968).

in the *Atley* footnote,[10] we find the statement in
the Federal case of *Dirring v United States*[11] clear
and instructive:

"The defendant cautions us against 'piling inference
upon inference.' As interpreted by the defendant this
means that a conviction could rarely be justified by
circumstantial evidence [citation omitted.] The rule is
not that an inference, no matter how reasonable, is to
be rejected if it, in turn, depends upon another reasona-
ble inference; rather the question is merely whether the
total evidence, including reasonable inferences, when
put together is sufficient to warrant a jury to conclude
that defendant is guilty beyond a reasonable doubt.
[Citations omitted.] If enough pieces of a jigsaw puzzle
fit together the subject may be identified even though
some pieces are lacking. Reviewing the evidence in this
case as a whole, we think the jury was warranted in
finding beyond a reasonable doubt the picture of defend-
ant Dirring."

In short, we express a preference for abandoning
the no inference upon an inference terminology
because we believe it to be misleading and uncer-
tain of meaning. There is nothing inherently
wrong or erroneous in basing a valid inference
upon a valid inference. In so indicating, we do not
consider that we are acting contrary to precedents
established by the Supreme Court which are, of
course, binding; on the contrary, we are consistent
with the substance of those decisions.

In this case, no objections were made by defend-
ant at trial to the circumstantial evidence that
convinced the jury of his guilt. Neither does de-
fendant claim on appeal that objections should
have been made at trial and sustained by the trial

[10] *People v Atley, supra,* pp 315–316, n 2.

[11] 328 F2d 512, 515 (CA 1, 1964), *cert den,* 377 US 1003; 84 S Ct
1939; 12 L Ed 2d 1052 (1964), *reh den,* 379 US 874; 85 S Ct 27; 13 L
Ed 2d 83 (1964).

court. No motion for directed verdict was made by defendant at trial, either on completion of the prosecutor's proofs or subsequent to both sides resting. No request was made for a jury instruction advising the jury that they were not permitted to pile one inference upon another. Neither was objection made in the trial court to the trial court's instruction to the jury.

As this Court indicated in *People v Horowitz*,[12] most arson cases are based upon circumstantial evidence. In affirming a conviction in *Horowitz,* this Court said:

"As evidence bearing upon the opportunity and motive of defendants to set the blaze, the prosecutor introduced the following facts: that the building was secured from the outside and there was no evidence of a breaking-in; that defendants were on the premises not long before the conflagration began; that it would have been easy for defendants to set the fire, although not physically present, by means of a timing device; that defendants owed three months rent; that they were indebted to the Michigan Department of Revenue for sales tax; that defendants owed $650 to the gas company; and that defendants carried $40,000 in fire insurance."

Stated simply, the issue here is: was the circumstantial evidence sufficient for the jury to find defendant guilty beyond a reasonable doubt? In this case, the evidence indicates that a police officer saw smoke coming out of a ventilation duct in a Kentucky Fried Chicken building near Sturgis sometime shortly before 5 a.m. on January 15, 1976; that firemen and the assistant manager of the building were called; that the building had been secured around 9:20 the previous night; that

---

[12] 37 Mich App 151, 157; 194 NW2d 375 (1971), *lv den* 387 Mich 753 (1972).

a window had been broken during the night; that the store safe had been moved and damaged; that money was missing from the safe; and that there was substantial fire damage to the premises. The evidence also indicates that a police officer discovered footprints in unsullied snow with a distinctive print; that he followed these tracks to the basement of an apartment building; that he was aided by a tracking dog in following the tracks; that defendant was apprehended lying on a ledge in the basement and his tennis shoes made the same distinctive print as seen in the tracks in the snow. In the basement where defendant was apprehended, the officer found a box containing a pair of gloves and some money. There was also evidence which, if believed, indicated that there was white powder on black gloves that defendant was wearing and also on his shoes. An officer from the State Police Crime Lab testified that a comparison of the substance found on the shoes and gloves with samples of the safe insulation taken from the Kentucky Fried Chicken safe indicated that the two could have come from the same source.

A book of K-Mart paper matches was found on defendant's person at his arrest. There was testimony that a box of K-Mart matchbooks was kept in a desk in the Kentucky Fried Chicken office. There was evidence that the desk had been rifled by the thief-arsonist. A partially burned paper match was found in the safe. That match was tested and compared with the matches found on defendant's person. There was testimony that the match found in the safe could have come from the matchbook defendant was carrying when arrested.

With respect to the conviction of attempting to break or injure a safe with intent to commit larceny contrary to MCL 750.531; MSA 28.799, the language of the statute insofar as relevant here, is:

"Any person who, with intent to commit the crime of larceny, * * * shall attempt to break, burn, blow up or otherwise injure or destroy any safe, * * * in any building * * * shall, whether he succeeds or fails in the perpetration of such larceny * * * be guilty of a felony * * * ."

From the testimony that the safe had been moved, that the safe had been damaged so as to make a hole in the upper left-hand corner of the safe big enough to reach in to the money tray where the cash had been left, a valid inference arises that an attempt had been made to break into the safe.

From the testimony of the assistant manager that there was approximately $100 in currency (bills) and $60 in coin in the safe when he locked it and that when he observed it in its damaged condition around or after 5 a.m. the next morning, none of the $160 in coin and currency was in the safe, a valid inference arises that someone had broken into the safe with intent to commit larceny.

From the testimony that tracks in the snow led from the building where the safe was to the basement of the apartment building where defendant was hidden on a ledge with his leg hanging down and with a box containing a roll of bills and a pair of gloves located about three feet from the ledge where defendant was, a valid inference arises that defendant was the person who had attempted to break into the safe with intent to commit larceny.

Without detailing the other evidence, we conclude that there was sufficient evidence to support

defendant's conviction under MCL 750.531; MSA 28.799.[13]

With respect to the conviction for arson under MCL 750.73; MSA 28.268, the question raised by defendant has more substance. The statute under which defendant is charged provides:

"Any person who wilfully or maliciously burns any building or other real property, or the contents thereof, * * * shall be guilty of a felony * * * ."

The statutory definition of burn is contained in MCL 750.71; MSA 28.266, as follows:

"The term 'burn' as used in this chapter shall mean setting fire to, or doing any act which results in the starting of a fire, or aiding, counseling, inducing, persuading or procuring another to do such act or acts."

The State Police fire expert testified that, based upon his inspection of the subject premises five days after the incident, there had been two separate fires in the building; one in the manager's office and the other in the storage area at the rear, and that ignition was caused by a human agent. He said the burned paper had been placed on the floor prior to the fire because there was no burning underneath the papers. He concluded ignition of the fires by a human agent because his examination of all burned materials, and materials that had been in the area of the fires' origins and had been subjected to burning and of the areas of the building where the fires had occurred, revealed no other source of ignition.

Thus, this uncontroverted expert testimony included direct evidence (observation of the physical conditions and facts) and circumstantial evidence (valid inferences by a qualified expert).

---

[13] *People v Ferguson*, 60 Mich App 302; 230 NW2d 406 (1975).

Also, there was testimony that in the safe were found bits of brown burned paper toweling and a burned paper match. When arrested, defendant had a matchbook with some of the paper matches missing and a K-Mart matchbook cover. Defendant also had on his person a cigarette lighter which had no lighter fluid. However, while the prosecutor's expert said the match found in the safe could have come from the book of matches taken from defendant, he was unable to say that it did come from that book.

Thus, the issue is whether this totality of evidence is sufficient for a jury to find defendant guilty of arson under MCL 750.73; MSA 28.268. Compared to *Horowitz, supra,*[14] the circumstantial evidence is stronger, but the strong evidence of motive found in *Horowitz* is lacking. In *People v Belcher,*[15] which is a murder in perpetration of arson case, this Court found credible evidence sufficient to find all of the elements established beyond a reasonable doubt.

Our job here is not to substitute our judgment for that of the jury; we only review to decide whether there was sufficient, credible evidence which, if believed, would establish the elements of the offense.[16]

In *People v Smock,*[17] the Supreme Court found

[14] 37 Mich App 151, 157; 194 NW2d 375 (1971), *lv den* 387 Mich 753 (1972).

[15] 29 Mich App 341, 352; 185 NW2d 440 (1971), *lv den* 384 Mich 821 (1971).

[16] *People v Gordon,* 60 Mich App 412; 231 NW2d 409 (1975).

[17] 399 Mich 282; 249 NW2d 59 (1976), reversing 63 Mich App 610; 234 NW2d 728 (1975). While there was the additional issue of whether, under MCL 750.73 and 750.71; MSA 28.268 and 28.266, a person can be found guilty as an aider and abetter without showing a guilty principal, the Court found that there was sufficient evidence to support jury verdicts of guilty against the defendants in an arson case even though there was no direct evidence linking defendants with the actual starting of a fire.

sufficient evidence to sustain a guilty of arson verdict on inferences that did not appear to carry greater weight than those present here.

We conclude that there was sufficient evidence here, which, if believed, supported a jury verdict of guilty of arson.

Affirmed.

D. F. WALSH, P. J., concurred.

R. M. MAHER, J. *(concurring in part; dissenting in part).* I would affirm defendant's conviction for attempting to break or enter a safe with intent to commit larceny. I cannot agree with the majority, however, that there was sufficient evidence to convict defendant of wilfully or maliciously burning a building.

Defendant's presence in the building was inferred from footprints leading to and from that building. The tracks of those footprints, when followed, led to an apartment building where defendant was discovered hiding in the basement. The shoes worn by defendant had a pattern on their soles similar to the tracks in the snow. A box of money was found near the place defendant was hiding in the basement and safe insulation was found on his shoes and allegedly on his gloves.

It can be inferred from these circumstances that defendant was in the building. The inference is drawn from circumstantial evidence. It is not based upon uncertain or speculative facts, but upon proven facts. The inference is thus permissible. *People v Eaves,* 4 Mich App 457, 464; 145 NW2d 260 (1966).

In order to convict defendant of arson, however, we must infer that he was in the building and then that the matches found on his person could

have come from the same book as those found at the building after the fire. Then we must infer that defendant started the fire. We draw farther and farther away from proven fact and move into the realm of speculation and possibility. Such a pyramiding of inferences is impermissible. *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974). See also, *People v Petro,* 342 Mich 299; 70 NW2d 69 (1955). It deprives defendant of the right to be proved guilty beyond a reasonable doubt. *People v McGregor,* 45 Mich App 397; 206 NW2d 218 (1973).

The majority has simply abandoned the holding of *People v Atley, supra.* While stating that it exercises the caution suggested in *Atley* when using the language in *Dirring v United States,* 328 F2d 512 (CA 1, 1964), the majority in practice does not. It disregards the language in *Atley* which states that *Dirring* did not even involve an inference upon an inference, and it ignores the assertion in *Atley* that "the *Dirring* language, in its unconditional form, is clearly inadequate." 392 Mich at 316, n 2.

The majority finds the no inference upon an inference standard to be misleading and uncertain of meaning. Yet the statement in *Dirring,* which the majority finds "clear and instructive", that "if enough pieces of a jigsaw puzzle fit together the subject may be identified even though some pieces are lacking" is expressly disapproved in *Atley* as being "too subjective a view to establish a proper jury instruction or to decide whether a case may go to the jury or be directed notwithstanding a verdict". 392 Mich at 316, n 2.

The no inference upon an inference rule is, indeed, a difficult concept. But that is no reason to abandon it, as the majority is only too anxious to do. A simpler concept is unsuitable to the complex

nature of the evidentiary question here involved. Courts must, at times, deal with difficult concepts rather than opt for their abandonment. In cases such as the present one, abandoning the concept means that defendant loses the protection of his right to be proved guilty of each element of the crime beyond a reasonable doubt.

Aside from the impermissible pyramiding of inference upon inference, defendant's conviction for arson fails under a separate standard. It is incumbent on the prosecution to show that there is no innocent theory possible which will, without violation of reason, accord with the facts. *People v Millard,* 53 Mich 63; 18 NW 562 (1884), *People v Spann,* 3 Mich App 444; 142 NW2d 887 (1966). In order to obtain a conviction upon circumstantial evidence, the prosecution must present evidence that not only points to defendant's guilt but also negates any reasonable theory of innocence. *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972), *People v Wingfield,* 62 Mich App 161; 233 NW2d 220 (1975), *People v Talley,* 67 Mich App 239; 240 NW2d 496 (1976).

In this case, the prosecution did not negate every reasonable theory of innocence. There is a reasonable possibility that the matches found on defendant's person did not come from the book of matches found in the burned building. There is likewise a reasonable possibility that defendant did not use the matches to start the fire. The possibilities comprising the theory of defendant's innocence were not negated by the prosecution. The circumstantial evidence was insufficient to support a finding beyond a reasonable doubt of defendant's guilt. *People v Talley, supra,* at 243–244. I would reverse defendant's conviction for arson.